NO. 07-04-0037-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 1, 2004

_____

DONALD S. BRYANT, JR. IND. AND AS TRUSTEE OF THE
BRYANT FAMILY TRUST, APPELLANT

V.

NICHOLAS ALLEN ROBLEE, A/K/A NICHOLAS RICHMOND,
NICHOLAS A. RICHMOND, AND THOMAS E. ROBLEE; PREMIER MARKETING
& INVESTMENTS, INC., A/K/A PREMIER MARKETING AND INVESTMENT
COMPANY, INC.; JEWELL MEYER; FIRST REPUBLIC BANK; EVERETT JUNG;
CALIFORNIA FEDERAL BANK; JAE K. JUNG; LEE MCMILLIAN;
AND JOSEPH SARANELLO, APPELLEES

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-520,479; HONORABLE J. BLAIR CHERRY, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**OPINION**

Donald S. Bryant, Jr., acting individually and as trustee for the Bryant Family Trust, brings this appeal from an order granting a special appearance filed by appellee, First Republic Bank. We will affirm.

The record before us shows Nicholas Roblee, a California resident, operated Premier Marketing & Investments, Inc., a California corporation. Appellant Bryant, a Texas resident, transferred $500,000 to Premier in the spring and summer of 2002 for investment purposes. Bryant brought suit in late 2002. His petition alleged Roblee and Premier failed to perform as agreed and failed to return the funds on his request. The petition also alleged Roblee and Premier made false representations concerning return of the money for the purpose of delaying his initiation of legal action against them.

Bryant also named other defendants, including First Republic Bank and one of its employees, Everett Jung. His first amended petition alleged Jung improperly had permitted Roblee and others to exercise authority over funds held in Premier's accounts[1] at the bank, and alleged First Republic was liable for Jung's actions. First Republic, a Nevada banking corporation, filed a special appearance pursuant to Rule of Civil Procedure 120a, in which it asserted it was not, and had never been, a Texas resident and was not otherwise amenable to process issued by Texas courts. Following a hearing, the court signed an order granting First Republic's special appearance. It then severed the claims against the other parties, creating the final judgment from which Bryant now appeals.

---

[1]Premier had two accounts at First Republic, opened at a First Republic branch in Los Angeles. Bryant's suit does not allege the funds he transferred to Premier ever were deposited in First Republic. The evidence indicates both accounts at First Republic were opened early in 2001 and closed later that same year, several months before Bryant first invested funds with Premier.

Bryant presents four issues, all challenging the sustention of First Republic's special appearance. Rule of Civil Procedure 120a provides for a special appearance by which a party may object to the court's jurisdiction over the party on the ground that it is "not amenable to process issued by the courts of this State." Tex. R. Civ. P. 120a; *see Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630 (Tex.App.–Dallas 1993, writ denied). Sections 17.041-.045 of the Civil Practice and Remedies Code provide for service of process on nonresident defendants "doing business" in our state. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2002). This provision of our long-arm statute extends personal jurisdiction of Texas courts "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

The exercise of personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Purposely established minimum contacts may give rise in a particular case to jurisdiction that is specific or general. *BMC Software,* 83 S.W.3d at 795. When specific jurisdiction is asserted, the cause of action must arise out of, or relate to, the nonresident defendant's contact with the forum state. *Id.* at 796. Pursuant to general jurisdiction, a forum may exercise personal jurisdiction over a defendant even with respect to a cause of action not arising from or relating to the defendant's activities within

the forum state, based on the defendant's "continuous and systematic" contacts with the forum state. *American Type Culture,* 83 S.W.3d at 807; *BMC Software*, 83 S.W.3d at 796. It requires "a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *Id*. at 797. Determination of what constitutes continuous and systematic contacts can be made only on a case-by-case basis. *American Type Culture*, 83 S.W.3d at 810. A defendant should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous" or "attenuated" contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L.Ed.2d 528, 105 S.Ct. 2174 (1985).

A defendant challenging, by special appearance, a Texas court's personal jurisdiction over it must negate all jurisdictional bases alleged by the plaintiff. *American Type Culture,* 83 S.W.3d at 807*; Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). The question whether a court has personal jurisdiction over a defendant is one of law. *American Type Culture,* 83 S.W.3d at 805-06; *BMC Software*, 83 S.W.2d at 794. When the challenge to a court's jurisdiction over a nonresident defendant requires factual determinations that are contested on appeal, a court of appeals reviews those determinations under the standards for legal and factual sufficiency. *BMC Software*, 83 S.W.2d at 794. In this case, the jurisdictional facts are not disputed, so we review *de novo* the trial court's application of the law to the established facts. *See C-Loc Retention Systems, Inc. v. Hendrix,* 993 S.W.2d 473, 476 (Tex.App.–Houston [14th Dist.] 1999, no pet.)

Bryant does not argue his claims against First Republic arise from its contacts with Texas. He seeks a finding of general jurisdiction over First Republic on the basis of what he alleges are its continuing and systematic contacts with our state.[2] No testimony was presented at the hearing on the special appearance. The evidence includes an affidavit of First Republic's chief operating officer supporting its special appearance motion and First Republic's responses to Bryant's interrogatories.

First Republic's principal office is in Las Vegas, Nevada, and its executive offices are in San Francisco. As noted, Premier had two accounts at First Republic, opened at a First Republic branch in Los Angeles. First Republic has no Texas branch, office or other place of business, and no employees in Texas. It does not have a Texas agent for service of process. Its officer's affidavit states First Republic has made "an occasional loan" to a Texas resident, but does not solicit business in Texas. The interrogatory responses reveal First Republic held, at the time of the response, 24 loans made during the past five years to customers with Texas mailing addresses, in the total principal amount of some $17,218,178, and had a total of 37 such loans during that period.[3] First Republic made more than 12,000 loans during that period, and had 7340 open loans on its balance sheet at the time of the response. It held real estate liens on eleven properties located in Texas,

---

[2]Bryant's first amended petition also alleged another employee of First Republic made a false representation to him during a telephone conversation, but he does not assert it as a basis for personal jurisdiction over First Republic.

[3]First Republic's responses also stated, in response to an interrogatory asking the "number of loans made within the past five years which have been paid off by Texas residents," that First Republic had "closed" 15 loans over the past 5 years that were made to customers with a mailing address in Texas.

securing loans in the original principal amounts of about $10,000,000. In addition, First Republic released five liens on Texas properties within the past five years. First Republic does not direct any advertising to Texas, but does advertise in national publications and maintain an Internet web site accessible from Texas.

Bryant's brief emphasizes First Republic's ownership of loans secured by liens on real property in Texas. He cites no authority in support of his premise that a nonresident corporation's ownership of loans secured by liens on Texas real property constitutes continuous and systematic contacts with our state authorizing the exercise of personal jurisdiction. Ownership of real property alone does not provide contacts sufficient to establish general jurisdiction over a nonresident corporation. *Potkovick v. Regional Ventures, Inc.*, 904 S.W.2d 846, 847 (Tex.App.–Eastland 1995, no writ) (foreign corporation's ownership of real property sufficient basis for jurisdiction when property is subject of suit); *see Shaffer v. Heitner*, 433 U.S. 186, 208, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977); *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 79 (Tex.App.--Austin 2001, pet. denied) (specific jurisdiction case). Merely contracting with a Texas resident is not sufficient. *Magnolia Gas Co. v. Knight Equip. & Manufac. Corp.*, 994 S.W.2d 684, 691 (Tex.App.–San Antonio 1998, no pet.). Nor is correspondence with state residents. *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). Likewise, we find that a nonresident corporation's ownership of loans secured by liens on Texas real property does not alone give our courts general jurisdiction over the corporation.[4]

---

[4]A conclusion that First Republic's mere taking of liens on Texas real property does not constitute minimum contacts forming a basis for the exercise of personal jurisdiction, and thus does not, standing alone, constitute "doing business" under the long-arm statute,

Bryant argues that First Republic has availed itself of the protections of our laws by taking liens on Texas real property because it would utilize Texas law in foreclosure of the liens. A similar contention could be made with respect to the ownership of legal title to real property. Moreover, we have no evidence First Republic ever has foreclosed a lien on property in Texas. That the nonresident might in the future find it necessary to take action under Texas law to protect or enforce its rights in its property is not evidence of continuous and systematic contacts with our state at present.

Bryant also argues the quality of a nonresident defendant's contacts, not the number, should govern the minimum contacts analysis, and that the analysis here should not be determined by the evidence that loans with ties to Texas represent only a small fraction of First Republic's loan portfolio. While we must agree with that proposition, *see American Type Culture,* 83 S.W.3d at 806 (noting the quality and nature of contacts, rather than the number, to be important to minimum contacts analysis), and while the total principal amount of First Republic's loans with ties to Texas is not inconsequential, the evidence concerning the existence of the loans does not tell much about the quality and nature of First Republic's contacts with our state. The evidence does not show where or in what manner the loans were made, nor does it characterize the loan customers as individuals or entities. It does not show whether the loans secured by Texas real property are the same loans as those made to customers having a mailing address in Texas at the

---

is consistent with provisions of Texas corporation law, by which foreign corporations are not deemed to be transacting business in our state and required to obtain a certificate of authority when they engage in transactions such as creating, acquiring or enforcing security interests in real property. *See* Tex. Bus. Corp. Act Ann. art. 8.01, §§ B(7), B(8), B(12) (Vernon 2003).

time of the interrogatory responses. As noted, the evidence contains First Republic's acknowledgment that it has made "an occasional" loan to a resident of Texas, but the record does not equate a customer's having a Texas mailing address with Texas residency. In short, the record does not demonstrate continuous and systematic contacts between First Republic and our state so as to permit our courts to exercise general jurisdiction over it. It is therefore unnecessary for us to address Bryant's arguments that the exercise of jurisdiction over First Republic in this case would be consistent with, and would not offend, traditional notions of fair play and substantial justice. We overrule Bryant's issues, and affirm the order and judgment of the trial court.


James T. Campbell
Justice