Affirmed in Part, Reversed and Remanded in Part, and Opinion filed
September 25, 2007








Affirmed in
Part, Reversed and Remanded in Part, and Opinion filed September 25, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01083-CV

____________

 

THE JOHNS HOPKINS UNIVERSITY, Appellant

 

V.

 

RAHUL K. NATH, M.D., Appellee

 

AND

 

RAHUL K. NATH, M.D., Appellant

 

V.

 

ALLEN J. BELZBERG, M.D., Appellee

 



 

On Appeal from the 215th
District Court

Harris  County, Texas

Trial Court Cause No. 2006-10826

 



 

O P I N I O N








Rahul K. Nath sued Johns Hopkins University (JHU) and Allen
J. Belzberg, claiming defamation and tortious interference.  Both JHU and
Belzberg specially appeared.  The trial court granted the special appearance of
Belzberg, dismissing him from the suit, but denied the special appearance of
JHU.  JHU appeals the denial of its special appearance, and Nath appeals the
granting of Belzberg=s.  Because the evidence is sufficient to
support the trial court=s implied finding that exercising personal
jurisdiction over Nath=s claims against Belzberg would violate
due process, we affirm the trial court=s order granting
Belzberg=s special
appearance.  Because, under the undisputed evidence regarding JHU=s contacts with
Texas, JHU does not have sufficient contacts to satisfy due process, we reverse
the trial court=s order denying JHU=s special
appearance and remand the case to the trial court with instructions to dismiss
the claims against JHU for lack of personal jurisdiction.

Factual
and Procedural Background

Dr. Rahul Nath is a Board Certified reconstructive
microsurgeon.  He is, or has been, the director of the Texas Nerve and
Paralysis Institute in Houston as well as the chairman and founding member of
the International Society of Brachial Plexus and Nerve Injury.  He specializes
in the treatment of brachial plexus injuries, and he is one of only a handful
of doctors in the United States who specialize in brachial plexus repair
operations.  His patients, most of whom first come to him as infants, hail from
inside and outside the state of Texas. 

Nath formerly worked with Dr. Saleh Shenaq at the Texas
Children=s Hospital
Brachial Plexus Clinic in Houston.  In July of 2004, Nath left the Clinic to
open his own practice, and approximately a year later, Shenaq did the same. 
Shenaq allegedly made defamatory statements about Nath to current and
prospective patients.  These alleged statements gave rise to the initial suit,
in which Nath sued Shenaq, Baylor College of Medicine (as Shenaq=s employer,
sponsor, and promoter), and Texas Children=s Hospital, an
entity affiliated with Baylor, which gave privileges to Shenaq.  His suit
alleged tortious interference with existing and prospective business
relationships and contracts, and defamation.  








During May of 2005, JHU held and sponsored the Brachial
Plexus Injury Symposium, in Baltimore, Maryland.  During the Symposium, Dr.
Allan Belzberg spoke with several patients of Nath who had attended the
conference.  Belzberg allegedly said several disparaging things about Nath to
these patients, including that Nath was being investigated by the FBI for
fraudulent actions, that Nath had been fired by Baylor College of Medicine,
that Texas doctors like Nath do not perform the medical procedures they say
they will perform, but rather Ajust close the patients up,@ that Nath did not
publish his research, and that Nath was patenting certain necessary medical
procedures and then charging excessive fees to perform those procedures.  Two
patients to whom these statements were made were from Texas, and one was from
California.  Belzberg allegedly also made similar statements, both in person at
the conference and in subsequent emails, to a Canadian doctor who attended the
conference.  

After hearing of Belzberg=s statements, Nath
amended his petition to add defamation and tortious interference claims against
Belzberg and his employer JHU.  JHU and Belzberg separately filed special
appearances, challenging the court=s ability to exercise
personal jurisdiction over them.  After a non-evidentiary hearing, the trial
court denied the special appearance of JHU, but granted the special appearance
of Belzberg.  JHU appeals the denial of its special appearance, and Nath
appeals the granting of Belzberg=s. 

Standard
of Review








Whether a trial court has personal jurisdiction over a
defendant is a question of law.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  When, as here, the trial court issues no
findings of fact and conclusions of law, all facts necessary to support the
judgment and supported by the evidence are implied.  See id. at 795. 
Parties can challenge the legal and factual sufficiency of these implied
factual findings. Id.  In conducting a legal sufficiency analysis, we
review the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it. See City of Keller
v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We must credit favorable
evidence if a reasonable factfinder could and disregard contrary evidence
unless a reasonable factfinder could not.  See id. at 827.  We must
determine whether the evidence at trial would enable reasonable and fair-minded
people to find the facts at issue.  See id.  The factfinder is the sole
judge of the credibility of the witnesses and the weight of their testimony. See
id. at 819.

When reviewing a challenge to the factual sufficiency of
the evidence, we examine the entire record, considering both the evidence in
favor of, and contrary to, the challenged finding.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  After considering and weighing all the evidence,
we set aside the fact finding only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole judge
of the credibility of the witnesses and the weight to be given to their
testimony. GTE Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599,
615B16 (Tex. App.BBHouston [14th Dist.]
2001, pet. denied).  We may not substitute our own judgment for that of the
trier of fact, even if we would reach a different answer on the evidence.  See
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The
amount of evidence necessary to affirm a judgment is far less than that
necessary to reverse a judgment. GTE Mobilnet, 61 S.W.3d at 616.

Law
of Personal Jurisdiction

The Texas long-arm statute governs Texas courts= exercise of
jurisdiction over non-resident defendants.  Marchand, 83 S.W.3d at 795; see
Tex. Civ. Prac. & Rem. Code '' 17.041B.045.  The statute
permits the exercise of jurisdiction over nonresident defendants who do
business in the state of Texas, and the statute lists activities that
constitute Adoing business.@  Id.; Tex. Civ. Prac. & Rem. Code '17.042.  However,
the list is not exclusive.  Marchand, 83 S.W.3d at 795.  The language of
section 17.042 extends the Texas courts= personal
jurisdiction as far as federal constitutional due process will permit. Id. (citing
 U‑Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977)). 









Federal due process allows the exercise of personal
jurisdiction over nonresident defendants when (1) the defendant has established
minimum contacts with the forum state, and (2) the exercise of jurisdiction
comports with traditional notions of fair play and substantial justice. Id. (citing
Int=l Shoe Co. v. Washington, 326 U.S. 310,
316 (1945)); PHC-Minden, L.P. v. Kimberly-Clark Corp., No. 05-0823, 2007
WL 2457843, at *2, BBS.W.3dBB,BB (Tex. Aug. 31,
2007).  For a defendant to have sufficient contacts with the forum, it is
essential that there be some act by which the defendant Apurposefully
avails@ itself of the
privilege of conducting activities in the forum state.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474B76 (1985).  The
Texas Supreme Court has identified at least three aspects of the Apurposeful
availment@ inquiry.  Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 784B85 (Tex. 2005).  First, only the defendant=s contacts with
the forum are relevant, not the unilateral activity of another party or a third
person. Id. at 785.  Second, the contacts relied upon must be purposeful
rather than random, isolated, or fortuitous. Id.  Third, the defendant
must seek some benefit, advantage, or profit by Aavailing@ itself of the
jurisdiction. Id.

A defendant=s minimum contacts can give rise to either
specific or general jurisdiction. See PHC-Minden, L.P., 2007 WL 2457843,
at *2.  Specific jurisdiction is established if the claims in question arise
from or relate to the defendant=s purposeful contacts with the forum. Id.
General jurisdiction is established if the defendant has continuous and
systematic contacts with the forum, without considering the plaintiff=s claims.  See
id. at *2B3.








A general jurisdiction inquiry is very different from a
specific jurisdiction inquiry and involves a more demanding minimum‑contacts
analysis, with a substantially higher threshold. Id. at *4.  Usually,
the defendant must be engaged in longstanding business in the forum state, such
as marketing or shipping products, or performing services, or maintaining one
or more offices there.  Id.  Activities that are less extensive than
that will not qualify for general jurisdiction. Id.  Courts analyze
general jurisdiction without regard to the nature of the alleged claims.  See
id.  As an analytical device to insure that any related forum activities
are not improperly infiltrating the dispute-blind inquiry into general
jurisdiction, the Texas Supreme Court has stated that courts should consider a
hypothetical claim that has no connection to Texas and ask if the defendant=s purposeful
contacts with Texas are so pervasive and extensive that they are sufficient to support
personal jurisdiction as to such a claim. Id. at *4B5.   In
conducting a general‑jurisdiction analysis, we are concerned with the
quality rather than the quantity of the contacts.  See Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 809B10 (Tex. 2002).  
In assessing the quality of the contacts, we do not view each contact in
isolation; rather, we carefully investigate, compile, sort, and analyze all
contacts to determine if together they are sufficient to support general
jurisdiction.  See id. at 809.  For this reason, a general jurisdiction
inquiry can be tedious. See PHC-Minden, L.P., 2007 WL 2457843, at *6.

The plaintiff has the initial burden of pleading sufficient
allegations to bring the nonresident defendant within the provisions of the
Texas long-arm statute.  Brocail v. Anderson, 132 S.W.3d 552, 556 (Tex.
App.CHouston [14th
Dist.] 2004, pet. denied).  A defendant challenging a Texas court=s personal
jurisdiction over it must negate all jurisdictional bases.  Id.

Jurisdictional
Analysis

A.      No
Jurisdiction Over Belzberg








Nath argues that specific jurisdiction over Belzberg is
proper because Belzberg=s actions were intended to injure Nath=s reputation and
practice in Texas, making Texas and a resident of Texas the foci of his
tortious conduct.  He relies on Calder v. Jones, 465 U.S. 783 (1984),
and the Aeffects test@ based thereon. 
However, in Michiana, the Texas Supreme Court rejected the Aeffects test.@ See Michiana
Easy Livin= Country, Inc., 168 S.W.3d at
788B92 (rejecting the Aeffects test@); Cerbone v.
Farb, 225 S.W.3d 764, 771B72 (Tex. App.BBHouston [14th
Dist.] 2007, no pet.) (concluding that the Michiana court rejected the Aeffects test@).  The Michiana
court did not construe the finding of specific jurisdiction in Calder as
turning on the defendants= alleged wrongdoing intentionally directed
at a forum resident; rather, the Michiana court construed Calder=s finding of
specific jurisdiction as turning on the defendants= Asubstantial >presence=@ in the forum
state based on the fact that the allegedly defamatory article on which the
defendants collaborated was for their employer, the National Enquirer,
which sold more than 600,000 copies in the forum state every week. See Michiana
Easy Livin= Country, Inc., 168 S.W.3d at
789.  Thus, under Michiana, Calder applies only in cases in which
the nonresident=s contacts with the forum are significant
enough to constitute a Asubstantial presence@ in the forum.[1]
See id.; see also Moki Mac River Expeditions v. Drugg, 221 S.W.3d
569, 585 (Tex. 2007) (holding that, for a nonresident defendant=s forum contacts
to support the exercise of specific jurisdiction, there must be a substantial
connection between the defendant=s purposeful
contacts with the forum and the operative facts of the litigation).

In this case, although Nath allegedly has suffered harmful
effects in Texas, nothing in the evidence shows a substantial connection
between the defendants= purposeful contacts with Texas and the
operative facts of the litigation.  All of the allegedly tortious activity
occurred in Baltimore, Maryland, or in emails to a Canadian doctor, not in
Texas.  Belzberg did not come to Texas, he did not call, and he did not send
correspondence to Texas.[2] 
In no way did Belzberg reach out to the state of Texas. 








Nath asserts that Belzberg=s allegedly
defamatory statements at the Symposium in Maryland were purposeful attempts to
interfere with Nath=s business relations with two of Nath=s Texas patients
and to solicit them to be Dr. Belzberg=s patients. 
However, this alleged defamation and solicitation was not sufficiently directed
or targeted at Texas. See Revell v. Lidov, 317 F.3d 467, 473 (5th Cir.
2002) (distinguishing Calder on the ground that the article was not
directed at Texas readers as distinguished from readers in other states).  The
statements and emails by Belzberg were targeted at a fellow doctor, residing in
Canada, and patients of Nath, who admittedly come from all across the country.[3] 
Thus, the statements were not targeted at Texas residents, but at people with
any connection with NathCa group with a geographical range far
beyond Texas.

Nothing in the evidence regarding Belzberg=s contacts with
Texas shows that Nath=s claims against him arise from or relate
to Belzberg=s purposeful contacts with Texas or that there is a
substantial connection between Belzberg=s purposeful
contacts with Texas and the operative facts of the litigation. See Moki Mac
River Expeditions, 221 S.W.3d at 585B88.  We,
therefore, affirm the trial court=s order granting
Belzberg=s special
appearance.  Nath=s issue is overruled.

B.      No
Jurisdiction Over JHU

JHU also appeals the denial of its special appearance. 
Nath=s case against JHU
is based on respondeat superior, not on specific tortious acts committed by
JHU.  Specific jurisdiction over JHU would have to be premised on specific
jurisdiction over Belzberg.  Having found that specific jurisdiction does not
exist over Belzberg, it cannot exist over JHU.  Therefore, we examine JHU=s contacts with
Texas to determine if the trial court=s holding that it
had general jurisdiction over JHU was correct.

JHU neither owns nor leases any buildings, sites, or
facilities in the state of Texas.  JHU=s principal place
of business is in Baltimore, Maryland.  The undisputed evidence shows that JHU=s contacts with
Texas are as follows: 








$                  
JHU has ten
employees who reside in Texas.  Most are part time, and in each case their
residence in Texas is based on personal circumstance or the unilateral act of a
third party.  Eight employees perform jobs that are online or require national
travel and have chosen Texas as their home for personal reasons.  Two employees
are nurse practitioners provided by JHU to PepsiCo, and they are subject to
employment at whatever facility Pepsi designates.  Pepsi assigned these two
nurse practitioners to Mesquite and Houston respectively.

$                  
Some of JHU=s students are from Texas.  In
2006, thirty-nine Texas residents enrolled as undergraduates.  JHU has mailed
typical undergraduate admission circulars to Texas and has participated in
three undergraduate recruitment receptions in Texas.  JHU also has athletic
teams that sometimes compete with Texas universities. 

$                  
JHU engages in
collaborative research, largely biomedical or otherwise scientific, with
research institutions in Texas such as M.D. Anderson or Baylor.  These
collaborations come about due to conditions placed on grant money or because of
recognized fields of expertise.  JHU=s end of the research collaboration is performed at the JHU
facilities in Baltimore.  In 2006, research collaboration with Texas
institutions constituted less than one percent of JHU=s research grants. 

$                  
JHU has been
the beneficiary of gifts, bequests and donations from Texas residents. 
Specifically, JHU has received by donation or bequest oil and gas royalty
interests in Texas.  These oil and gas royalty payments yielded $215,219 in
2006, representing some .08% of JHU=s annual investment income.  JHU was named in 2005 as a
defendant in a will contest proceeding in Angelina County, where the sons of a
JHU donor are contesting the decedent=s donation to the university.

$                  
JHU maintains a
registered agent for service of process in Texas, arising from consulting work
JHU did for some school districts in Texas in the past.  The consulting work
has since been discontinued.

$                  
JHU
maintains an informational website that can be accessed by Texas citizens.  Its
primary function is to provide information about JHU=s academic
curricula, its faculty and personnel, and to offer a wide array of information
about JHU=s research and educational operations.

1)       Some
Contacts Are Not Purposeful

We find that several of the alleged contacts are not
purposeful contacts by JHU with Texas.  The fact that JHU had ten employees in
Texas shows no availment of Texas law because JHU has shown that each of those
employees lives in Texas either of their own accord, or because a third party,
namely PepsiCo, ordered them to do so.  Their location in Texas is wholly
independent of any decision by JHU.  








Likewise, the evidence shows that, although JHU
collaborates on research projects with Texas institutions from time to time,
this does not reflect purposeful contacts by JHU with Texas.  The evidence
shows that the grants are shared with Texas institutions on occasion because
the sponsors have donated money to JHU and a Texas institution jointly, or
because highly specialized or experienced researchers happen to work at Texas
institutions.  These collaborations are not the result of a targeted effort to
conduct business in Texas, but rather they result from the wishes of the grant
sponsor or the desire to work with the most qualified researchers, regardless
of where they may be.   See Michiana Easy Livin= Country, Inc., 168 S.W.3d at
785 (Aa defendant will
not be haled into a jurisdiction solely based on contacts that are >random, isolated,
or fortuitous.=@); see also Gallant v. Trustees of
Columbia Univ., 111 F. Supp. 2d 638, 642 (E.D. Pa. 2000) (holding that
there was no purposeful availment when the record did not show that research
contracts in forum were the result of university=s purposeful or
extensive availment, as opposed to generally participating in interstate
academic activities). 

2)       Other Contacts Are Not Substantial

JHU=s other contacts with Texas are simply not
substantial enough to support general jurisdiction. See PHC-Minden, L.P.,
2007 WL 2457843, at *6B7.  JHU is a defendant in a will-contest
proceeding based on its status as a beneficiary under the will being
challenged, and JHU has answered without contesting personal jurisdiction. 
However, this failure to contest personal jurisdiction in a case in which the
court would apparently be able to exercise specific jurisdiction does not show
that JHU has continuous and systematic contacts with Texas.  Likewise, JHU=s status as a
defendant in this will-contest suit is not a high quality contact supporting
general jurisdiction.








JHU has mailed recruiting literature to students in Texas,
has attended three undergraduate receptions, has admitted thirty to fifty
undergraduates from Texas, and has athletics teams that compete in the state
from time to time.  These types of contacts would give a defendant little
reason to believe it could be haled into court.  See World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980); PHC-Minden, L.P.,
2007 WL 2457843, at *6.

JHU operates a website which can be accessed from Texas. 
However, the website=s primary function is to provide
information about the university Afor students,
prospective students or other faculty who may have an interest in additional
information related to JHU=s academic or research activities.@  The website is
not aimed specifically at students in Texas.  Rather it is an informational
tool for any prospective student, regardless of location, who wants to gather
information on JHU.  

Internet contacts are evaluated on a Asliding scale.@  Experimental
Aircraft Ass=n, Inc. v. Doctor, 76 S.W.3d 496,
506 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  At one end of
the spectrum, the website may support a finding of personal jurisdiction when a
defendant does business over the internet by entering into contracts and
through the repeated transmission of computer files.  Id.  At the other
end, personal jurisdiction cannot be based on the passive posting of information
on the internet. Id. at 506B07.  Courts
evaluate the middle ground contacts based on the level of interactivity and the
commercial nature of the exchange of information.  Id. at 507.[4]









Nath argues that the website has been held in the past to
support the establishment of personal jurisdiction, citing an unreported
Louisiana federal district court case.  See Peyman v. Johns Hopkins Univ.,
No. Civ. A-99-3717, 2000 WL 973665 (E.D. La., July 12, 2000).  The court in Peyman
gave very little detail about the JHU website, stating that the JHU website
advertises to students and Asolicit[s] contributions from alumni.@ Id. at
*2.  The court, admitting that no contracts are entered into via the website,
nevertheless concluded that it is Amore than passive
advertisement@ and therefore, falls into the middle range of the
sliding scale. Id. at *4.  The court then used the website as a contact
supporting jurisdiction within a general jurisdictional analysis. Id. at
*3B4.

While the Peyman court stressed that JHU=s website is used
to solicit contributions, in this case, the only evidence of the nature of JHU=s website is an
affidavit from the Executive Director of Communications and Public Affairs for
JHU.  He states that the primary purpose of the website is to provide
information.  There is no mention of business being transacted on the website, or
even interactivity on the website.  Under these facts, the website is not a
substantial factor in favor of jurisdiction.  See Experimental
Aircraft Ass=n, Inc., 76 S.W.3d at 506B07.

JHU also has oil and gas royalty interests in the state of
Texas.  However, owning oil and gas interests is not enough of a contact to
confer general jurisdiction.  See Shaffer v. Heitner, 433 U.S. 186, 213
(1977) (holding that ownership of property in the forum alone is not sufficient
to support general jurisdiction); Bryant v. Roblee, 153 S.W.3d 626, 630B31 (Tex. App.BBAmarillo 2004, no
pet.) (holding that ownership of real property in Texas by itself does not
establish general jurisdiction and that bank did not have continuous and
systematic contacts with Texas despite holding real estate liens on eleven
properties in Texas securing loans on an aggregate principal amount of about
$10,000,000).  Moreover, these royalty interests represented only .08% of JHU=s investment
income last year.

Maintaining an agent for service of process also does not
by itself give rise to general jurisdiction, but is only a factor to be
considered in the jurisdictional analysis.  See Zamarron v. Shinko Wire Co.,
Ltd., 125 S.W.3d 132, 144 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied); see also Wenche Seimer v. Learjet Acquisition
Corp., 966 F.2d 179, 181B82 (5th Cir. 1992).  The importance of the
registration in this case is diminished because JHU proved that the agent was
registered a decade ago due to some work it was doing with Texas school
districts.  This work has since been terminated.








In summary, when JHU=s purposeful contacts
with the forum are cumulated, they do not amount to the type of continuous and
systematic activity in the forum necessary to exercise general jurisdiction. 
JHU has not been engaged in significant and longstanding business in Texas.  See
PHC-Minden, L.P., 2007 WL 2457843, at *4B7 (holding that
isolated trips to Texas, more than $1,500,000 in purchases from Texas vendors,
and two contracts with Texas entities were not substantial enough to support
general jurisdiction).  Nor is the sum of the above purposeful contacts great
enough to meet the more demanding minimum‑contacts analysis of general
jurisdiction. See id.  JHU=s purposeful
contacts with Texas are not pervasive and extensive enough to allow Texas
courts to exercise personal jurisdiction over a hypothetical claim against JHU
that has no connection to Texas. See id. at *4B5.  Under the
uncontroverted evidence regarding JHU=s contacts with
Texas, the trial court erred in impliedly finding general jurisdiction. 
Because the evidence relating to JHU=s contacts with
Texas conclusively proved that JHU has not established sufficient minimum
contacts with Texas to allow the exercise of personal jurisdiction over JHU, we
conclude that the trial court erred in denying JHU=s special
appearance.  JHU=s issue is sustained.

Conclusion

We affirm the trial court=s order granting
Belzberg=s special
appearance, but reverse the trial court=s order denying
JHU=s special
appearance, sever the latter order, and remand to the trial court with
instructions to dismiss all claims against JHU for want of personal
jurisdiction.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Opinion filed September 25, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost.

 









[1]  In his brief, Nath argues that Calder and Keeton
focus on the circulation of periodicals because the large volume of
circulation in each case allowed an inference that the defamatory statements
were actually read in California and New Hampshire respectively.  We disagree
with this characterization of those cases.  The Supreme Court discussed the
large circulations in those cases because they demonstrated the defendants= extensive activities in the forum, not because they
showed that the defamation was read in the forum.  The Michiana court
pointed to Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984), as
proof that the defendants= activities in the forumBBrather than the residence of the victimBBwas Athe important factor@ in determining the jurisdictional question. See Michiana Easy Livin= Country, Inc.,
168 S.W.3d at 789 (noting that the United States Supreme Court in Keeton placed
weight on the fact that defendant had sold more than 10,000 copies of its
magazine every month in the forum state, in which the plaintiff was not a
resident).  Therefore, contrary to Nath=s
position, the fact that it is uncontroverted that the allegedly slanderous
statements were heard does nothing in this case to show that Belzberg or JHU
have sufficient minimum contacts with Texas.





[2]  Nath cites to Brown v. Flowers Indus., Inc.,
688 F.2d 328 (5th Cir. 1982), as a very similar case to this one.  But even in Brown,
the exercise of personal jurisdiction was based on an allegedly defamatory
telephone call made by a defendant directly to the forum.  See id. at
330B31; Michiana Easy Livin= Country, Inc.,
168 S.W.3d at 790 n.70.  Nath also relies on Paul Gillrie Inst., Inc. v.
Universal Computer Consulting, Ltd., 183 S.W.3d 755 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  Paul Gillrie is
not on point because that case involved publishing and mailing an allegedly
defamatory article to subscribers within Texas, many of whom paid for their
subscriptions.  See id. at 758.





[3]  Of the four affidavits produced by Nath in response
to the special appearance, two were from Texas residents and two were from
non-Texas residents.  





[4]  The Fifth Circuit has noted that this Asliding scale@
test is not well suited to the general jurisdiction inquiry. Revell, 317
F.3d at 471.  Nevertheless, courts, including this one, have used it in a
general jurisdiction analysis to determine whether a defendant=s website is a significant factor in support of
jurisdiction. See Experimental Aircraft Ass=n, Inc., 76
S.W.3d at 507.  Therefore, we follow this precedent.