NO. 07-12-0181-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 23, 2012
_____

HURLEY PACKAGING OF TEXAS, INC., AND HURLEY BRUSH
COMPANY, INC., D/B/A THE THREE "B" BRUSH CORP.,

Appellants

v.

NEWPORT FINANCIAL PARTNERS, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY, AND GEORGE BOJORKUEZ,
A/K/A GEORGE BOJORQUEZ,

Appellees
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2011-559,889; HONORABLE WILLIAM C. SOWDER, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMBPELL and  PIRTLE, JJ.

Hurley Packaging of Texas, Inc., and Hurley Brush Company, Inc., d/b/a The

Three "B" Brush Corp. (collectively referred to as Hurley) appeal the dismissal of a suit

brought against Newport Financial Partners, LLC, a California Limited Liability

Company, and George Bojorkuez, a/k/a George Bojorquez (collectively referred to as

Newport). Hurley contends that the trial court had personal jurisdiction over Newport and erred when it found otherwise. We affirm.

### *Background*

Hurley is a manufacturing company based in Lubbock, Texas. It manufactures corrugated boxes, packaging and pallet containers, paper recovery and recycling, and molded fiber packaging that is sold nationwide. It received a fax from Liberty Financial regarding the leasing of equipment. Liberty Financial was shown to be located in Fort Worth, Texas. Hurley contacted Liberty and was advised that "they actually didn't process lease equipment; however, they . . . ha[d] a company they worked with and referred" them to Nathan Brandt. Brandt was located in California and worked for Newport. Brandt advised he could give Hurley financing for a lease/buyout agreement wherein Hurley could then buy the equipment for a dollar. Emails were exchanged between Hurley and Brandt negotiating the terms. A few days later, Hurley received an email from George Bojorquez, the director of business development for Newport. This led Hurley to believe that Newport was getting ready to "fund everything."

The equipment subject of the financial arrangement involved nine shrink wrap machines and computer software located in Lubbock, Texas. The leases were signed by Hurley and returned to Newport. They also sent the first and last month's lease payments for the subject equipment, which money Newport deposited. Hurley never received a copy of the lease agreement containing Newport's signature, or that of Newport's representatives. Nor was the equipment purchase ever funded by Newport.

2

Hurley eventually requested that its deposits be returned. They were not. This led to Hurley filing suit against Newport. The latter filed a special appearance, and a hearing was held on that issue.

After hearing evidence, the trial court entered findings that 1) Hurley contacted Newport initially, 2) Hurley sent the first payment to Newport in California, and 3) the only action being performed in Texas by Newport involved the provision of funding to Hurley in Texas. The record further shows that Newport is a California corporation and is not licensed to do business in Texas and that the funding source to be used in the lease agreements was located in Utah. Furthermore, according to the lease that Hurley signed, California law was to govern the lease, and Hurley consented to jurisdiction in Orange County, California.

Hurley did not dispute the fact that 1) no one representing Newport travelled to Texas to negotiate the agreements, 2) there was no performance by Newport in Texas other than funding, 3) the payments were made to Newport in California, 4) Liberty Financial was not associated with Newport, 5) Newport had no associations with any partnerships or any other companies in Texas, 6) Hurley made the initial contact with Newport, 7) Hurley had never done business with Newport before this incident, 8) Newport is a California corporation, 9) Newport is not licensed to do business in Texas, 10) Newport does not specifically target businesses in Texas or Texas companies, 11) Newport receives lists of customers off of databases they acquire nationally, 12) Newport does not own property in Texas, and 13) the funding was going to be provided from a company in Utah.

*Analysis*

Whether a trial court has personal jurisdiction over a non-resident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790-91 (Tex. 2005); *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805-06 (Tex. 2002)*; BMC Software v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). An appellate court, therefore, reviews the trial court's determination of a Rule 120a motion *de novo. Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007). However, it is often necessary for the trial court to resolve questions of fact before deciding the question of jurisdiction. *Marchand,* 83 S.W.3d at 794. The plaintiff must allege facts that, if true, would make a non-resident defendant subject to the personal jurisdiction of a Texas court. *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 496 (Tex. 1988). Thus, the initial burden is on the plaintiff to sufficiently allege facts bringing the non-resident defendant within the Texas long-arm statute. *American Type Culture Collection, Inc.,* 83 S.W.3d at 807; *see* TEX. CIV. PRAC. & REM. CODE ANN. §17.042 (West 2008). This, however, is a minimal pleading requirement which is satisfied by an allegation that the non-resident defendant is doing business in Texas. *Huynh v. Nguyen,* 180 S.W.3d 608, 619-20 (Tex. App.–Houston [14th Dist.] 2005, no pet.); *see Perna v. Hogan,* 162 S.W.3d 648, 652-53 (Tex. App.–Houston [14th Dist.] 2005, no pet.) (indicating that the pleading requirement can be satisfied by alleging non-resident defendant is doing business in Texas or non-resident defendant committed an act in Texas).

It is the burden of the non-resident defendant to negate all bases of jurisdiction alleged in the plaintiff's petition. *Moki Mac,* 221 S.W.3d at 574; *Marchand,* 83 S.W.3d

4

at 793. Texas courts may assert personal jurisdiction over a non-resident defendant if authorized by the long-arm statute and the exercise of jurisdiction is consistent with federal due process guarantees. *Moki Mac,* 221 S.W.3d at 574. The long-arm statute authorizes the exercise of jurisdiction by a Texas court over a non-resident defendant that does business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. §17.042 (West 2008). The statute presents a non-exhaustive list of activities constituting doing business. *Marchand,* 83 S.W.3d at 795. In part, the statute provides that a non-resident does business in Texas if it commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE ANN. §17.042(2) (West 2008). The broad statutory language has been held to extend the personal jurisdiction of a Texas court as far as the federal constitutional requirements of due process will permit. *Marchand,* 83 S.W.3d at 795 (*quoting U-Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex. 1977)); *Bryant v. Roblee,* 153 S.W.3d 626, 629 (Tex. App.–Amarillo 2004, no pet.).

In the case before us, we find the parties' course of dealing under the executed agreements insufficient to show that Newport purposefully availed itself of the privilege of conducting activities within Texas so as to satisfy the minimum contacts requirement for exercise of personal jurisdiction over it by a Texas court. And, unlike the situation in *American Preferred Servs. v. Harrison,* No. 07-11-0065-CV, 2011 Tex. App. LEXIS 7761 (Tex. App.–Amarillo September 28, 2011, no pet.), there is evidence of the parties agreeing to resolve disputes between them through California, as opposed to Texas, courts. Though not determinative, that is one additional indicia suggesting that Newport endeavored to insulate itself from the jurisdiction of Texas courts. Nor do we have

5

evidence of other transactions involving Newport in or with Texas citizens, unlike in *American Preferred*.

Accordingly, we overrule Hurley's contentions and affirm the trial court's dismissal order.

Per Curiam

Campbell, J., concurs.