NO. 07-11-0257-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 22, 2012

_____


TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, APPELLANT

V.

MARGARITA HERNANDEZ VILLAGRAN, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF SALVADOR VILLAGRAN, SR., DECEASED,
SALVADOR VILLAGRAN, JR., ALEJANDRO VILLAGRAN AND JORGE VILLAGRAN,
ALL INDIVIDUALLY AND AS LEGAL HEIRS OF THE ESTATE OF SALVADOR
VILLAGRAN, SR., DECEASED, APPELLEES

_____


FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-548,209; HONORABLE RUBEN REYES, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


**OPINION**


Appellant, Texas Tech University Health Sciences Center, brings this
interlocutory appeal to challenge the trial court's denial of its claim of sovereign
immunity filed pursuant to election of remedies provisions of the Texas Tort Claims Act.[1]

_____
[1]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 - 101.109 (West 2011).

Finding that a governmental unit cannot use subsections 101.106(b), 101.106(e) and 101.106(f) *seriatim* to dismiss claims against both the governmental unit and its employees, thereby effectively dismissing a claimant's entire suit, we find the trial court did not err in denying Texas Tech University Health Sciences Center's motion to dismiss.[2] Accordingly, we affirm.

## FACTUAL BACKGROUND

On April 29, 2007, Salvador Villagran, Sr. sought treatment and surgical correction at University Medical Center in Lubbock for a fractured wrist he suffered from a fall. University Medical Center is a medical treatment facility operated by Texas Tech University Health Sciences Center. Texas Tech University Health Sciences Center and University Medical Center are institutions, the status and authority of which are derived from the Constitution of Texas or from laws passed by the Legislature under the Constitution, and as such, they are "governmental units" as defined by the Tort Claims Act. *See* § 101.001(3)(D); *Texas Tech Univ. Health Sci. Ctr. v. Ward*, 280 S.W.3d 345,

---

[2]Subsections 101.106(b), 101.106(e) and 101.106(f) provide, in pertinent part, as follows:

> (b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

348 (Tex.App.--Amarillo 2008, pet. denied). As governmental units, they are entitled to sovereign immunity in accordance with the provisions of the Tort Claims Act. *See* §§ 101.001 - 101.109.

At University Medical Center, Mr. Villagran was treated by Doctors Melvin Laski, Elizabeth Cobb, and Corey Don Ball. He was discharged on May 2, 2007, with portable oxygen despite having decreased oxygen saturations and complaints of pain to his left ribs and shortness of breath. He was taken to University Medical Center again on May 4, 2007, and the following day, Dr. Wael Tello performed a bronchoscopy which did not reveal any injury or bleeding. On May 11th, following a chest x-ray which revealed a pneumothorax, Dr. Tello inserted a chest tube into Mr. Villagran's left chest wall. Within a matter of hours, the nursing staff reported bright blood draining from the chest tube. At that time Doctors Zachary Paul Mulkey, Shannon Yarbrough and Ronny William Ford became involved. Dr. Ford requested a cardiothoracic consult and on May 12th, a resuscitative thoracotomy was performed, revealing internal bleeding. Despite open cardiac massage and intracardiac epinephrine, doctors were unable to resuscitate Mr. Villagran and he was pronounced dead.

## PROCEDURAL BACKGROUND

As a result of Mr. Villagran's death, Appellees filed suit on July 10, 2009, alleging that deviations from the standards of care due Mr. Villagran proximately caused his death. Their original petition named seven individual defendants and alleged the following specific negligent acts and omissions:

3

- as to Doctors Laski, Cobb and Ball - failing to recognize and properly treat Mr. Villagran's progressive atelectasis and hypoxia resulting from blunt chest trauma; failing to observe and treat him in the hospital rather than discharging him home with oxygen;

- as to Doctor Tello - failing to use appropriate technique in placing the chest tube on May 11, 2007, to avoid intrathoracic injury; failing to recognize intrathoracic injury causing massive bleeding; failing to appropriately administer fluid resuscitation; failing to timely consult a Cardiothoracic Surgeon to promptly perform an emergent thoracotomy to control the bleeding; and,

- as to Doctors Mulkey, Ford and Yarbrough - failing to recognize intrathoracic injury causing massive bleeding; failing to appropriately administer fluid resuscitation; failing to timely consult a Cardiothoracic Surgeon to promptly perform an emergent thoracotomy to control the bleeding.

Appellees also alleged that each of the foregoing acts or omissions was a negligent act on the part of the doctors which constituted a deviation from the applicable standards of care and was a proximate cause of Mr. Villagran's injuries and death, as well as Appellees' damages. Plaintiffs' Original Petition did not name Texas Tech University Health Sciences Center as a Defendant.

On September 2, 2009, Dr. Wael Tello filed a motion seeking his dismissal from the lawsuit pursuant to section 101.106(f) of the Tort Claims Act. In that motion, Dr. Tello alleged that the suit against him was prohibited by subsection (f) because, at all relevant times, he was acting within the scope of his employment at Texas Tech University Health Sciences Center and suit could have been brought against that

4

governmental unit because he was accused of misusing tangible personal property, to-wit: a chest tube. *See* § 101.021.[3]

In response to Dr. Tello's motion to dismiss, Appellees filed an amended petition on September 30, 2009, dismissing Dr. Tello as a defendant and substituting Texas Tech University Health Sciences Center as the defendant responsible for his acts. The other six doctors named in the original petition remained as defendants in the amended petition. As to Texas Tech University Health Sciences Center, Appellees alleged the following specific negligent acts and omissions:

- failing to use appropriate technique in placing the chest tube on May 11, 2007, to avoid intrathoracic injury;

- failing to recognize intrathoracic injury causing massive bleeding;

- failing to appropriately administer fluid resuscitation; and

- failing to timely consult a Cardiothoracic Surgeon to promptly take the patient for an emergent thoracotomy to control the bleeding.

Appellees further alleged that Texas Tech University Health Sciences Center's negligent acts and omissions were a deviation from the applicable standards of care and were the proximate cause of Mr. Villagran's injuries and death. The amended pleading continued that Texas Tech University Health Sciences Center was responsible for the negligent

---

[3]Section 101.021 provides in pertinent part:

A governmental unit in the state is liable for:

* * *

    (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

conduct of its attending physicians, residents, interns, medical students, employees, agents, servants and representatives under the doctrine of *respondeat superior*.

On January 15, 2010, Texas Tech University Health Sciences Center filed a motion to dismiss the six remaining individual defendants contending that because Appellees had sued both a governmental unit and its employees, suit against the employees should be dismissed pursuant to subsection 101.106(e) of the Tort Claims Act. By a separate motion filed on February 25, 2011, Texas Tech University Health Sciences Center filed a motion to dismiss all claims filed against it contending that because Appellees had sued the employees, all claims against it were barred pursuant to subsection 101.106(b). Construing the two motions together, Texas Tech University Health Sciences Center is contending that because Appellees sued a governmental unit and its employees, the entire lawsuit should be dismissed.

By order dated March 3, 2011, the trial court granted Texas Tech University Health Sciences Center's motion to dismiss Appellees' claims against Doctors Laski, Cobb, Ball, Mulkey, Ford and Yarbrough pursuant to subsection 101.106(e). Following a subsequent hearing on Texas Tech University Health Sciences Center's subsection 101.106(b) motion to dismiss, the trial court took the matter under advisement and on June 9, 2011, entered an order denying the motion. This accelerated appeal followed.[4]

---

[4]Appellees have not questioned this Court's jurisdiction over this interlocutory appeal. The statute which authorizes appeal from an interlocutory order of a trial court denying a motion for summary judgment based on an assertion of immunity by a governmental unit also confers jurisdiction upon a court of appeals for purposes of consideration of an appeal based upon a trial court's denial of a motion to dismiss filed pursuant to the election-of-remedies provisions of the Texas Tort Claims Act. *Singleton v. Casteel*, 267 S.W.3d 547, 549-50 (Tex.App.--Houston [14th Dist.] 2008, pet. denied).

By a single issue, Texas Tech University Health Sciences Center maintains the trial court's subject matter jurisdiction was defeated by the voluntary act of Appellees in filing suit against both it and its employee doctors regarding the same subject matter. According to Texas Tech University Health Sciences Center's theory, the trial court erred when it denied their subsection 101.106(b) motion to dismiss based on sovereign immunity.[5]

Appellees contend Texas Tech University Health Sciences Center is wrong for any one of three reasons: (1) the claims asserted against Doctors Laski, Cobb, Ball, Mulkey, Ford and Yarbrough are both legally and factually distinguishable from the claims originally asserted against Dr. Tello and later asserted against Texas Tech University Health Sciences Center and do not, therefore, involve the "same subject matter" rendering subsection 101.106(b) inapplicable; (2) Texas Tech University Health Sciences Center has consented to this suit via either subsection 101.021(2) or subsection 101.106(f); and (3) the immunity provisions of subsection 101.106(b) are superseded by the substitution provisions of subsection 101.106(f).

We believe that the dictates of statutory construction compel us to reconcile the seemingly contradictory provisions of subsections 101.106(b), 101.106(e) and 101.106(f) in such a way as to find that, under the facts of this case, neither the original petition alleging claims against Dr. Tello and the other doctors, nor the subsequently filed amended petition alleging claims against both the governmental unit and its

---

[5]The position being taken by the Office of the Attorney General in this case is diametrically opposed to the position it took when it filed the *Brief of Amicus Curiae the State of Texas* on February 23, 2012, in *City of North Richland Hills v. Friend,* No. 11-0367, Texas Supreme Court (submitted awaiting opinion), available at http://www.supreme.courts.state.tx.us/ebriefs/11/11036708.pdf.

employees, acts as an election of remedies bar to Appellees' claims against Texas Tech University Health Sciences Center. Furthermore, we find that, for purposes of subsection 101.106(b), the claims against Doctors Laski, Cobb, Ball, Mulkey, Ford and Yarbrough do not involve the same subject matter as the claims against Texas Tech University Health Sciences Center. Because the disposition of these two arguments addresses every contention raised and necessary to a final disposition of this appeal, we will not address Appellees' second argument regarding waiver of immunity by consent. *See* Tex. R. App. R. 47.1.

## ELECTION OF REMEDIES -- SECTION 101.106

The Tort Claims Act provides a limited waiver of immunity for certain suits against governmental units, including suits alleging liability arising from the condition or use of tangible personal property and it caps the amount of recoverable damages. *See* §§ 101.021 and 101.023; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655-56 (Tex. 2008). After enactment of the Tort Claims Act, some plaintiffs sought to avoid its requirements and damages caps by suing individual employees of governmental units instead of the governmental units themselves. *Mission Consol.,* 253 S.W.3d at 656. Section 101.106, the election of remedies provision, was created to protect governmental employees and to prevent that kind of circumvention of the Tort Claims Act. *Id.*

The Legislature amended section 101.106 in 2003 to protect governmental employees from a plaintiff pursuing alternative theories of liability against both the

8

employee and the government unit.[6]  *See id.*  By requiring a plaintiff to make an election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and the duplication of litigation costs.  *Id.*  This election of remedies scheme is intended to protect governmental employees by favoring their early dismissal when a claim involving the same subject matter is *also* made against the governmental employer.  *See id.*; § 101.106(e), (f).

Because a plaintiff's choices and procedural actions impact the immunity of either the governmental unit or the employee of the governmental unit, section 101.106 is considered to be a jurisdictional statute involving the waiver of immunity.  *See State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

## STANDARD OF REVIEW

Generally, a trial court's ruling on a motion to dismiss is reviewed for abuse of discretion.  *Am. Transitional Care Ctrs. of Texas*, *Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001).  However, when sovereign immunity is raised under the Tort Claims Act, it raises the issue of a trial court's subject matter jurisdiction, which is a question of law we review *de novo*.  *See City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010); *City of San Antonio v. Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).  Furthermore, issues of statutory construction are always reviewed *de novo*.  *Entergy Gulf States*, *Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

---

[6]Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886.

## CLAIMS AGAINST DR. TELLO

Subsection 101.106(b) provides that "[t]he filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents."  However, subsection 101.106(f) provides that if a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and it could have been brought against the governmental unit under the provisions of the Tort Claims Act, on that employee's motion, the suit against the employee shall be dismissed unless the plaintiff files, within 30 days of the filing of that motion, an amended pleading dismissing the employee and naming the governmental unit.  *See* § 101.106(f).  How is it then that subsection (f) apparently provides for the filing of a claim against a governmental unit that subsection (b) has already "immediately and forever" barred?

## STATUTORY CONSTRUCTION

When the wordings of statutes appear to be contradictory, we consult statutory construction rules and related legislative history.  *Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935).  In interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent in enacting that statute.  *See* Tex. Gov't Code Ann. § 312.005 (West 2005); *In re Canales*, 52 S.W.3d 698 (Tex. 2001).  Legislative intent is determined from the entire act, not just isolated portions, *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002), and, unless otherwise indicated, words are

10

given their ordinary meaning. *See* Tex. Gov't Code Ann. § 312.002 (West 2005). In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider the object sought to be attained, the circumstances under which the statute was enacted, the statute's legislative history, the common law or former statutory provisions, the consequences of a particular construction, the administrative construction of the statute, as well as the title, preamble or emergency provisions of the enactment. *See id.* at § 312.023. In determining the Legislature's intent, we are to consider at all times the "old law, the evil, and the remedy," § 312.005, and in considering the remedy intended, a statute shall be liberally construed so as to achieve its purpose and to promote justice. *See id.* at § 312.006.

## ANALYSIS

In this case, Appellees originally sued the individual employees only. Dr. Tello, believing that the suit against him was based on conduct within the general scope of his employment by Texas Tech University Health Sciences Center, and further believing that the suit could have been brought against the governmental unit based upon his alleged negligent use or misuse of tangible personal property, moved for the dismissal of all claims against him pursuant to subsection 101.106(f). In response thereto, and within 30 days of the date Dr. Tello's motion was filed, Appellees filed an amended pleading dismissing their claims against Dr. Tello and naming Texas Tech University Health Sciences Center as defendant. To construe subsection 101.106(b) as absolutely and forever barring any suit against Texas Tech University Health Sciences Center based upon the original suit against Dr. Tello would render the substitution provisions of subsection 101.106(f) meaningless. Here, on Dr. Tello's motion, the suit against the

11

employee was dismissed and the governmental unit was substituted in his place on or before the 30th day after the date the motion was filed. Such action clearly falls within the plain meaning of subsection 101.106(f) and, to the extent that subsection 101.106(b) conflicts with subsection 101.106(f), we find that specific provisions of 101.106(f) control. Accordingly, we find the trial court did not err in denying the motion to dismiss filed on behalf of Texas Tech University Health Sciences Center on the basis of the original suit filed against Dr. Tello.

## CLAIMS AGAINST DOCTORS LASKI, COBB, BALL, MULKEY, FORD AND YARBROUGH

Texas Tech University Health Sciences Center further contends that, pursuant to the provisions of subsection 101.106(b), when Appellees filed their amended petition against the six individual doctors (other than Dr. Tello) and Texas Tech University Health Sciences Center, they irrevocably elected to proceed solely against those six individuals, forever barring any suit or recovery against Texas Tech University Health Sciences Center "regarding the same subject matter unless the governmental unit consents." Relying on *Mission Consol. Ind. Sch. Dist. v. Garcia*, *supra*, Texas Tech University Health Sciences Center contends that subsection 101.106(b) operates to bar Appellees' claims against it. Our review, however, reveals that, not only is *Mission Consol.* factually distinguishable from this case, the decision in that case turned on the question of whether the Legislature consented to suit, not whether the claim being asserted against the individual defendant was the "same subject matter" as the claim being asserted against the governmental unit.

12

The Texas Supreme Court addressed the issue of "same subject matter" in the case of *Dallas County Mental Health & Retardation v. Bossley*, 938 S.W.2d 339 (Tex. 1998), *cert denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). In *Bossley,* the Court held that the phrase "same subject matter" means a cause of action "arising out of the same actions, transactions, or occurrences." *Id.* at 344 (quoting *Serra v. Pichardo*, 786 F.2d 237, 239 (6th Cir.), *cert denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986)). While the *Bossley* Court did not further define an "occurrence," we agree with our sister court that factors normally used to determine *res judicata* are relevant. *See McGowen v. Huang*, 120 S.W.3d 452, 459 (Tex.App.--Texarkana 2003, pet. denied). For purposes of *res judicata*, suits involve the same transaction based on a consideration of "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties expectations . . . ." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992).

Based on these factors, we believe Texas Tech University Health Sciences Center construes the "same subject matter" too narrowly by failing to analytically differentiate the claims asserted against the six remaining doctors from the claims originally asserted against Dr. Tello and subsequently asserted against Texas Tech University Health Sciences Center pursuant to subsection 101.106(f). Not only are those claims being asserted against different alleged tort-feasors, they arise from independent and different alleged acts of negligence that occurred at different times, in different places, involving different medical diagnosis and treatment. Appellees' pleadings are very specific and the causes of action asserted against the remaining six

13

doctors, arising from their individual acts of alleged negligence, are not so intertwined with the cause of action arising from Dr. Tello's negligence as to be incapable of distinction. Their only connection is the unfortunate death of Mr. Villagran and the fortuitous circumstance that, but for the claim of sovereign immunity, the same employer could be held to be vicariously liable for their individual but separate acts of negligence.

Under this analysis, we do not believe that the claims being asserted against Texas Tech University Health Sciences Center involve "the same subject matter" as the claims that were previously asserted against Doctors Laski, Cobb, Ball, Mulkey, Ford or Yarbrough. Therefore, under these circumstances, subsection 101.106(b) is inapplicable and does not operate to bar those claims.

Furthermore, even if subsection 101.106(b) were applicable to the claims being asserted by Appellees, *Mission Consol.* does not support Texas Tech University Health Sciences Center's attempt to use subsections 101.106(b) and 101.106(e) *seriatim* to dismiss the entire suit. *See Mission Consol.*, 253 S.W.3d at 657 (holding that "recovery against an individual employee is barred and may be sought against the governmental unit only . . . when suit is filed against both the governmental unit and its employee, *id.* § 101.106(e)"). When a claimant files suit against both a governmental unit and its employee, that governmental unit cannot use both subsections 101.106(b) and 101.106(e) to require dismissal of all claims. *City of Houston v. Esparza,* No. 01-11-00046-CV, 2011 Tex. App. LEXIS 8224, at *19-20 (Tex.App.--Houston [1st Dist.] Oct. 7, 2011, pet. filed). Instead, when a claimant sues both the governmental unit and its employee together, the overall statutory scheme of section 101.106 requires that the trial court dismiss the employee upon the governmental unit's motion, leaving the

14

governmental unit to defend suits that otherwise comport with the Tort Claims Act's jurisdictional constraints.  *Id.* at *19.  Therefore, when a claimant fails to elect between defendants and instead sues both the governmental unit and its employee regarding the same subject matter, subsection (b) forces an election upon the claimant:  the governmental unit is the proper defendant and the employee must be dismissed.  *Id.*

In *Esparza*, the plaintiff filed suit against both the City of Houston and its employee, claiming that the employee was negligent in causing a motor vehicle accident.  The City moved to dismiss the employee under subsection 101.106(e).  *Id.* at *2.  It also filed a plea to the jurisdiction asserting that Esparza's claims against the City were barred by subsection 101.106(b).  *Id.*  The trial court granted the motion to dismiss the employee but denied the City's plea to the jurisdiction.  *Id.*  On rehearing, the First Court of Appeals affirmed the judgment of the trial court. *Id.* at *36.  The circumstances of this case and the contentions being made by Texas Tech University Health Sciences Center are analogous to the factual and procedural background in *Esparza* and the contentions made by the City of Houston.  We agree with our sister court and follow that holding by concluding that Appellees' claims against Texas Tech University Health Sciences Center are not barred by subsection 101.106(b).

Accordingly, we conclude the trial court did not err in denying the motion to dismiss.  Texas Tech University Health Sciences Center's sole issue is overruled and the order of the trial court is affirmed.

Patrick A. Pirtle
Justice

15