**Opinion issued April 25, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00896-CV

———————————

**11500 SPACE CENTER, L.L.C., SPACE CENTER BOULEVARD LAND DEVELOPMENT, L.P., CULLEN'S, L.L.C. AND BERMUDA DUNES DEVELOPMENT, L.P., Appellants**

**V.**

**PRIVATE CAPITAL GROUP, INC., Appellee**

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2017-00594

# O P I N I O N

Appellants, 11500 Space Center, L.L.C., Space Center Boulevard Land

Development, L.P., Cullen's, L.L.C., and Bermuda Dunes Development, L.P.

("Developers"), sued appellee, Private Capital Group, Inc. ("PCG"), for deceptive

trade practices, fraud, negligent misrepresentation, and money had and received. PCG filed a special appearance, which the trial court granted. In four issues, Developers argue that the trial court erred in granting PCG's special appearance because Developers pleaded and proved sufficient jurisdictional facts, which PCG failed to negate; the exercise of jurisdiction would not offend the traditional notions of fair play and substantial justice; and the trial court relied on PCG's legally insufficient affidavit.

We affirm.

## Background

Developers brought this action against loan servicer PCG, alleging PCG made misrepresentations that caused them to overpay certain fees and interest on their loan.

According to their pleadings, Houston-based Developers borrowed $11,450,000.00 for a four-month period from PCG Credit Partners, L.L.C. ("Lender"),[1] a Delaware entity with its principle place of business in Alpine, Utah, under the terms of a Loan Agreement secured by a promissory note granting interests in both personal and real property. The Loan Agreement provided that

---

[1] Lender is not a party to this action.

2

Developers would bear all of Lender's cost and expenses in connection with the loan, including servicing, legal, and brokerage fees.[2]

Lender engaged PCG to service the loan.[3] According to Developers, PCG falsely represented to them and to First American Title Company (the "Title Company") the amount of costs and expenses Lender incurred, which costs and expenses the Loan Agreement obligated Developers to bear.[4]

Several months after Lender and Developers closed on the loan, PCG, in accordance with its role as loan servicer, issued pay-off statements to Developers. According to Developers, the pay-off statements falsely represented that they owed Lender additional sums not reflected in the closing statement. Developers also alleged that PCG represented to them that Lender would not release liens against their property unless they paid in full.

Developers paid according to the pay-off statements. Over a year later, Developers' counsel sent PCG and Lender a letter requesting documentation establishing the service, legal, and brokerage fees, and resolving the

---

[2]    The Loan Agreement provides that "[a]ll costs and expenses of Lender that occur during the lifetime of the Loan or at any time during which the Loan was being processed or underwritten" are to be borne by Developers.

[3]    The servicing agreement between Lender and PCG does not appear in the record.

[4]    According to Developers, PCG represented that Lender had incurred $687,000.00 in originating and servicing fees and $16,000.00 in legal fees to PCG, and $114,500.00 in brokerage fees to nonparty Blue Cap Commercial Funding, Inc.

3

"discrepancies" regarding the pay-off balances. PCG responded by email and provided the pay-off statements as accountings.

Developers sued PCG for deceptive trade practices, fraud, negligent misrepresentation, and money had and received.

PCG filed a special appearance, in which it stated that it is not a resident of Texas, but a Delaware corporation with its principal place of business in Alpine, Utah; it has "no office, place of business, staff, team members, or any other affiliations with the State of Texas"; and it "neither engaged in continuing relationships and obligations with citizens of Texas, profited from Texas' laws, [n]or subject[ed] itself to Texas' jurisdiction." PCG also stated that Developers reached out from Texas to obtain the loan in Utah, and every one of Developers' allegations, if true, "occurred in the State of Utah either before or at the time that the [Loan Agreement] was executed."

PCG attached the affidavit of its vice president, Benjamin Schramm. In it, Schramm stated that PCG's principal place of business is "solely in the State of Utah" and that PCG has "no connections with the State of Texas." He also stated that Developers "reached out" to PCG in Utah "to obtain the loan" and that "[a]ny and all" of the negotiations occurred in Utah, as did "the work related to this relationship." And while, to make signing the Loan Agreement easier, Developers were permitted to sign documents in Texas, both PCG and Lender executed all

4

agreements including the closing documents, in Utah. Further, "[p]ayments on the loan were to be made through Wells Fargo Bank in Highland, Utah," and "[m]onies lent were escrowed with Charger Title Insurance Agency located in Orem, Utah."

PCG's special appearance included, in the alternative, a motion to transfer venue, in which PCG argued that venue is mandatory in Salt Lake County, Utah, because the Loan Agreement stated that Developers "submit[] to the jurisdiction of the Federal and District Courts located in Salt Lake County, Utah."

In response, Developers argued that PCG is subject to personal jurisdiction in Texas because this suit arises from its misrepresentations to Texas residents regarding a loan secured (under the promissory note) by Texas property. They alleged two misrepresentations. The first is the amount of Lender's costs and expenses. Other than providing the affidavit of Kevin Munz[5] stating that PCG "represented" the amount of Lender's costs and expenses to him and to the Title Company at the loan closing in Texas, Developers do not specify how PCG communicated this amount from Utah to them in Texas. The second misrepresentation Developers alleged is the loan pay-off amount reflected in the

---

[5] Munz is the President of Mr. Money Holdings, Inc., the Manager of 11500 Space Center, L.L.C. and Cullen's, L.L.C., and the General Partner of Space Center Boulevard Land Development, L.P. and Bermuda Dunes Development, L.P.

pay-off statements. Here again, Developers do not indicate how PCG transmitted the pay-off statements to them in Texas.

Developers also alleged that PCG sent correspondence to them in Texas and was paid for its services with funds sent to Utah from Texas. They further alleged that, after they paid off the loan, PCG repeatedly solicited their business. Finally, Developers asserted that because PCG is not a party to the Loan Agreement, it may not invoke the Loan Agreement's forum selection and choice of law clauses providing for jurisdiction in Utah.

Developers included in their response a motion to strike Schramm's affidavit, arguing that his testimony was not based on personal knowledge and that he was not competent to testify. *See* TEX. R. CIV. P. 120a(3) (affidavits in support of special appearance "shall be made on personal knowledge"). They asked, in the alternative, for a continuance to conduct jurisdictional discovery.

While there is nothing in the record indicating that the trial court ruled on any part of PCG's special appearance (including the motions to transfer venue and for a continuance), the record reflects that the parties conducted jurisdictional discovery including Schramm's deposition. Thereafter, Developers filed a supplemental response to PCG's special appearance, asserting that by testifying at his deposition that PCG agreed to service the loan "from inception through funding through default," including the possibility of foreclosure, Schramm "acknowledged

6

that [PCG] agreed to perform its loan servicing obligations in Texas." They also asserted that PCG's discovery responses showed that it prepared legal documents and perfected Lender's security interest by filing a "financing statement" with the Texas Secretary of State and instructing the Title Company to record the real property deed of trust with the Harris County Clerk. And they averred that Schramm's deposition confirmed the assertion they made in their original response that he lacked personal knowledge to support his prior affidavit testimony.

In response, PCG filed an amended special appearance, adding the argument that, pursuant to the Loan Agreement's forum selection clause, venue was mandatory in Utah.

The trial court granted PCG's special appearance and dismissed the case for lack of personal jurisdiction without making findings of fact and conclusions of law.

## Special Appearance

### A. Standard of Review and Applicable Law

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, and thus we review de novo the trial court's determination of a special appearance. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). However, the trial court frequently must resolve questions

7

of fact before deciding the jurisdiction question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "When [as here] a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795.

Texas courts may exercise personal jurisdiction over a nonresident if the long-arm statute authorizes it, consistent with federal and state constitutional due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas, and it provides a non-exhaustive list of activities that constitute "doing business," including committing a tort "in whole or in part" in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2); *BMC Software*, 83 S.W.3d at 795 (long-arm statute extends Texas courts' jurisdiction "as far as the federal constitutional requirements of due process will permit" (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977))).

Personal jurisdiction over a nonresident is consistent with due process when the nonresident has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v.*

8

*Washington*, 326 U.S. 310, 316 (1945)).  In most cases, the exercise of jurisdiction over a nonresident defendant will not conflict with notions of fair play and substantial justice if the nonresident has minimum contacts with the forum. *Moncrief Oil*, 414 S.W.3d at 154–55.

"A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The Texas Supreme Court has identified three distinct aspects of the "purposeful availment" requirement.  First, only the defendant's contacts with the forum are relevant, as a nonresident should not be called to court in a jurisdiction solely as a result of the unilateral activity of another party.  *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).  Second, the defendant's acts must be purposeful, as opposed to random, isolated, or fortuitous.  *Id.*  Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.  *Id.*

A defendant's contacts can vest a court with either specific or general jurisdiction.  *BMC Software*, 83 S.W.3d at 795.  Specific jurisdiction requires that the claims at issue arise from or relate to the defendant's purposeful contacts with Texas.  *Kelly*, 301 S.W.3d at 658.  General jurisdiction, on the other hand, is

9

predicated on the defendant's "continuous and systematic" contacts that render it "essentially at home in the forum State," irrespective of whether his alleged liability arises from those contacts. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)). Because general jurisdiction permits a court to exercise personal jurisdiction over a nonresident for claims not directly linked to his contacts with the state, a general jurisdiction inquiry requires a more demanding minimum contacts analysis with a "substantially higher threshold." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). And although there is no precise formula for the number of contacts necessary to establish general jurisdiction, it is clear that the requisite level is substantial. *Id.* at 167.

When a defendant challenges the exercise of personal jurisdiction in a special appearance, the plaintiff and the defendant bear shifting burdens. *Kelly*, 301 S.W.3d at 658. The initial burden is on the plaintiff to plead sufficient allegations to establish jurisdiction over the defendant. *Id.* After the plaintiff meets its initial burden, the burden shifts to the defendant to negate all bases of jurisdiction alleged by the plaintiff. *Id.*

The defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. To negate jurisdiction on a factual basis, the defendant can "present evidence that it has no contacts with Texas, effectively disproving the plaintiff's

allegations." *Id.* Alternatively, the defendant can negate jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true," (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas do not amount to purposeful availment; (3) for specific jurisdiction, the plaintiff's claims do not arise from the defendant's contacts; or (4) the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

## B.   Analysis

In their first and third issues, Developers contend that they "affirmatively proved" and PCG "failed to negate" the allegations in their petition establishing both specific and general jurisdiction. PCG responds that it negated both specific and general jurisdiction on a legal basis. *See Kelly*, 301 S.W.3d at 659 (defendant can negate jurisdiction on legal basis by showing that even if plaintiff's alleged facts are true, defendant's contacts with Texas do not confer personal jurisdiction). Thus, we consider whether PCG's Texas contacts as alleged by Developers, taken as true, permit the exercise of personal jurisdiction. *Id.*

### 1.   General Jurisdiction

"[G]eneral jurisdiction is only present when a defendant not only has continuous and systematic contacts with the forum state, but also has these kinds of contacts to such an extent that they render it essentially at home in that state."

*Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72–73 (Tex. 2016) (citing *Daimler*, 134 S. Ct. at 760).

Developers argue that the exercise of general jurisdiction over PCG is proper based on Schramm's testimony that someone from PCG may have made a business trip to Texas and that PCG has serviced four loans secured by Texas property and foreclosed on one. But Developers have not provided any information regarding PCG's activities "in their entirety, nationwide and worldwide," information which is critical because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20; *see also Bryant v. Roblee*, 153 S.W.3d 626, 630–31 (Tex. App.—Amarillo 2004, no pet.) (evidence nonresident defendant made "an occasional" loan to Texas residents "does not tell much about the quality and nature" of contacts, absent evidence showing, for example, where or in what manner loans were made, or whether loan customers were individuals or entities). Absent contextual information, these kinds of contacts do not confer general jurisdiction. *See Daimler*, 134 S. Ct. at 762 n.20; *see also Bautista v. Trinidad Drilling Ltd.*, 484 S.W.3d 491, 503 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[W]ithout evidence about the full nature of [defendant]'s business and contacts with Texas as compared to other forums, the record does not support the exercise of general jurisdiction based on the presence of a single employee in Texas."); *Brenham Oil & Gas, Inc. v. TGS-NOPEC*

12

*Geophysical Co.*, 472 S.W.3d 744, 759 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Occasional travel to Texas is insufficient by itself to establish continuous and systematic contact with the state."); *DENSO Corp. v. Hall*, 396 S.W.3d 681, 693–94 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (155 trips to Texas by foreign corporation personnel over ten-year period did not support general jurisdiction because evidence did not establish general business presence).

Because Developers' allegations and the record evidence do not support a finding that PCG's contacts with Texas were so substantial that it was "essentially at home" in Texas, we conclude that PCG satisfied its burden to negate general jurisdiction on a legal basis. *See Kelly*, 301 S.W.3d at 659.

## 2. Specific Jurisdiction

For Texas to exercise specific jurisdiction over PCG, two things are required: PCG's Texas contacts must have been purposeful, and Developers' claims for deceptive trade practices, fraud, negligent misrepresentation, and money had and received must arise from those contacts.[6] *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (quoting *Michiana*, 168 S.W.3d at 795 (for Texas court to exercise specific jurisdiction over nonresident defendant,

---

[6] Because Developers rely on the same factual allegations for each of their claims, we need not assess PCG's contacts on a claim-by-claim basis. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013); *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

13

(1) defendant's contacts with Texas must be purposeful, and (2) cause of action must arise from those contacts)).

Our analysis centers on PCG's actions and choices to enter the state of Texas and conduct business, as opposed to its contacts with Texas residents. *See Old Republic*, 549 S.W.3d at 561 ("[A] proper minimum-contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there."); *Searcy*, 496 S.W.3d at 76 ("[T]he proper focus is on the quality of the defendant's contacts with the forum, as opposed to the residence of the plaintiff."). In other words, we consider only PCG's contacts resulting from its own "efforts to avail itself of the forum." *TV Azteca*, 490 S.W.3d at 38 (quoting *Moki Mac*, 221 S.W.3d at 576).

A review of the record establishes that PCG was not a party to the loan transaction that forms the basis of this case. It was selected by Lender to service Lender's loan to Developers. PCG performed all of its servicing obligations to Lender—also a Delaware corporation with its principle place of business in Utah—from its office in Utah; it did not travel to Texas in connection with the loan. All communications PCG sent to Developers in Texas, including the alleged misrepresentations, were prepared at and sent from its office in Utah. Thus, for PCG's purposes, Developers "could, quite literally, have been based anywhere in the world," and PCG "would presumably have interacted with [them] in the same

14

way." *See Searcy*, 496 S.W.3d at 75–76; *see also Jutalia Recycling, Inc. v. CNA Metals Ltd.*, 542 S.W.3d 90, 97 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Specific jurisdiction does not turn on where a plaintiff happens to be." (citing *Searcy*, 496 S.W.3d at 70)).

Nonetheless, Developers claim that PCG purposefully availed itself of the privilege of doing business in Texas by sending, in unspecified manner, misrepresentations to them in Texas concerning (1) Lender's costs and expenses, and (2) the loan pay-off amount.[7] But electronically transmitting a fraudulent or negligent misrepresentation to a Texas resident does not constitute the commission of a tort in Texas, and therefore does not establish specific jurisdiction. *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 393 (Tex. App.—Dallas 2012, no pet.) (citing *Michiana*, 168 S.W.3d at 791 ("[C]hanges in

---

[7] Developers also alleged in their petition that PCG is subject to jurisdiction in Texas under Texas long-arm statute section 17.042(1) because their "underlying contract"—presumably the Loan Agreement—with Lender "was to be performed in whole or in part in Texas . . . and [PCG]'s performance of that contract gives rise to this cause of action." *See* TEX. CIV. PRAC. & REM. CODE § 17.042(1) ("[A] nonresident does business in this state if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state[.]"). But because Developers consistently acknowledge that PCG "is not a party to the Loan Agreement," section 17.042(1) does not apply. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 n.9 (Tex. 2010). Further, in its special appearance, PCG points out that the Loan Agreement states that it "is made in the County of Utah, State of Utah" and "[t]he relevant contracts contain mandatory venue provisions and specifically define that any litigation or dispute must be maintained in the State of Utah." *See Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 75 (Tex. 2016) (designating foreign forum "suggests that no local availment was intended" (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex. 2005))).

technology have made reliance on phone calls obsolete as proof of purposeful availment.")); *see also, e.g.*, *Chameli v. Fla. Gas Transmission Co. LLC*, No. 01-17-00823-CV, 2018 WL 3059732, at *6 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) (defendant's email and phone communications, including alleged misrepresentation, to plaintiffs in Texas did not constitute minimum contacts); *Majors Mgmt., LLC v. Price & Co.*, No. 09-17-00063-CV, 2018 WL 771008, at *7–8 (Tex. App.—Beaumont Feb. 8, 2018, no pet.) (mem. op.) (no purposeful availment where all of nonresident defendant's contacts with plaintiff were through telephone calls, email messages, and wire transfers; defendant contacted plaintiff in Texas, communicated with plaintiff by telephone and email in Texas, made material misrepresentations to plaintiff while plaintiff was in Texas, and wired money to plaintiff in Texas, but defendant did not "physically enter the state"); *Hatzenbuehler v. Essig*, 526 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (telephone calls and emails alleged to contain misrepresentations were "not sufficient to establish that [defendant's] alleged tortious acts were directed to Texas," because "[t]he Supreme Court of Texas has specifically rejected telephone calls, without more, as a basis for establishing personal jurisdiction based on a tort committed in the state"); *Tran v. Tran*, No. 01-16-00248-CV, 2017 WL 817183, at *4 (Tex. App.—Houston [1st Dist.] Mar. 2, 2017, no pet.) (mem. op.) (defendant's alleged misrepresentations

16

through several phone calls to plaintiff in Texas "do not satisfy the minimum contacts requirement for Texas jurisdiction").

Further, the mere allegation that a defendant "directed" a tort to a Texas resident is insufficient to confer specific jurisdiction. *Michiana*, 168 S.W.3d at 790–92; *see also Old Republic*, 549 S.W.3d at 565 ("[W]e have explicitly rejected an approach to specific jurisdiction that turns upon where a defendant 'directed a tort' rather than on the defendant's contacts."); *TV Azteca*, 490 S.W.3d at 43 ("[T]he mere fact that [defendants] directed defamatory statements at a plaintiff who lives in and allegedly suffered injuries in Texas, without more, does not establish specific jurisdiction over [defendants]."); *Moncrief Oil*, 414 S.W.3d at 152 ("Texas's interest in protecting its citizens against torts is insufficient to automatically exercise personal jurisdiction upon an allegation that a nonresident directed a tort from outside the forum against a resident.").

The Texas Supreme Court announced this rule in *Michiana*, which involved a Texas resident's purchase of a recreational vehicle from an Indiana dealer. 168 S.W.3d 777. The plaintiff called the dealer in Indiana to negotiate the deal, then sent payment to Indiana, and arranged to have the vehicle shipped from Indiana to Texas. *Id.* at 784. When a dispute arose, he sued the dealer in Texas, claiming the dealer made misrepresentations in the phone call that subjected it to specific jurisdiction here. *Id.* The supreme court disagreed. *Id.* at 790–92. In so doing, it

17

expressly disapproved of opinions holding that specific jurisdiction "is necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number," or "turns on whether a defendant's contacts were tortious rather than the contacts themselves." *Id.* at 791–92. Admonishing that such an approach would confuse the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits of the case, the court held that the mere allegation that a defendant directed misrepresentations to Texas residents is insufficient to confer specific jurisdiction over it. *Id.*

Accordingly, we conclude that PCG did not submit to specific jurisdiction merely by communicating Lender's fees and the loan pay-off amount to Texas residents, even if these communications contained misrepresentations. *See id.* (specific jurisdiction turns on contacts themselves, not on whether defendant's contacts were tortious).

And while Texas courts have held that directing a tort into Texas can constitute purposeful availment when combined with conduct that was "extensive," as discussed below, PCG's Texas contacts did not rise to such a level. *See id.* at 789–90 & n.70 (extensive conduct includes conduct "aimed at getting extensive business in or from the forum state"); *see also TV Azteca*, 490 S.W.3d at 35–36, 52 (evidence defendants harmed Texas residents and knew harmful broadcasts were viewable in Texas was insufficient standing alone, but established specific

18

jurisdiction when taken together with evidence defendants "exploited the Texas market to capitalize on the broadcasts that traveled into Texas"); *Moki Mac*, 221 S.W.3d at 578 ("Moki Mac's contacts with Texas did not result, as did the defendant's in *Michiana,* from the mere fortuity that the [plaintiffs] happened to reside here. Rather, the contacts it had with Texas resulted from additional conduct through which it aimed to get extensive business in or from this state.").

First, Developers alleged that PCG sent several communications to Texas. Importantly, none of these communications found their way to Texas as a result of any contact PCG initiated; PCG did not "seek out" Developers in Texas to service their loan. *See Michiana*, 168 S.W.3d at 784–86 (defendant who allegedly committed tort by making misrepresentations in phone call to plaintiff in Texas, but did not initiate contact with Texas plaintiff or make any affirmative efforts to solicit business here, did not seek to benefit from doing business in Texas and was not subject to specific jurisdiction here).

The communications include loan documents (a letter of instruction to the Title Company and the promissory note), two letters regarding a loan that was never transacted, a single email responding to Developers' inquiries, and, after Developers had paid off the loan, solicitations for Developers' future business, evidenced by a single email from PCG to Blue Cap, asking Blue Cap to pass along to Developers the message that PCG is "[l]ooking for additional funding sources."

19

This handful of communications, much of which PCG sent in performance of its loan servicing obligations to Lender,[8] is far from voluminous or extensive. *See Searcy*, 496 S.W.3d at 62 (even considering "voluminous" extent of communications, foreign entity did not purposefully avail itself of Texas's jurisdiction because its "contacts with Texas were too fortuitous and attenuated"); *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[N]umerous telephone and facsimile communications with people in Texas relating to an alleged contract do not establish minimum contacts."). And because Developers did not allege that PCG travelled to Texas to service the loan, we assume that all of these communications were transmitted electronically and thus were inconsequential. *See Old Republic*, 549 S.W.3d at 560 ("On their own, numerous [electronic] communications with people in Texas do not establish minimum contacts . . . ." (citing *Michiana*, 168 S.W.3d at 791)).

Developers also alleged as contacts the payments that passed between them in Texas and PCG in Utah. But the electronic transfer of money—a fungible asset with no continuing presence in Texas—is "of negligible significance" and does not ordinarily establish purposeful availment, even, unlike here, where it is part of "an

---

[8]   Regarding the letter of intent and conditional letter of approval, both dealing with a separate loan that was never transacted, Developers do not supply sufficient context to evaluate this contact. For example, they do not indicate whether PCG sent it as a solicitation, or in connection with prior contact (and if so, who initiated that contact). We therefore do not consider this single contact to be significant.

elaborate fraudulent-transfer scheme." *Old Republic*, 549 S.W.3d at 564 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17, (1984)); *Michiana*, 168 S.W.3d at 788 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.").

Further, the allegation that PCG may have performed legal services for the loan, such as perfecting Lender's security interest by filings with the state of Texas, is wholly irrelevant here, where Developer did not enjoy an attorney-client relationship with PCG. And even if it had, such relationship would be insufficient on its own to show purposeful availment. *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484 (Tex. App.—Dallas 2010, pet. denied) (stating that "mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum," does not confer personal jurisdiction over nonresident defendant); *see also Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 468–69 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (Texas court could not exercise specific jurisdiction over Indiana lawyer whose relevant communications were made from Indiana to Texas, where lawyer exercised legal judgment and formed legal opinion in Indiana). Moreover, Developers have not established that there was any connection, much less a substantial one, between any legal work PCG may have done in connection with the loan and the alleged misrepresentations that

21

form the basis of Developers' claims. *See Moki Mac*, 221 S.W.3d at 585 (requiring "substantial connection" between contacts and operative facts of litigation); *Brenham Oil & Gas*, 472 S.W.3d at 765 ("The Texas-linked evidence relied upon by [plaintiff] pertains only to [defendant]'s nontortious conduct . . . . [t]hese forum contacts are not the operative facts of the litigation and therefore are not contacts that will support an exercise of specific jurisdiction.").

Finally, we disagree with Developers' argument that PCG purposefully availed itself of the privilege of doing business in Texas by obligating itself under its agreement with Lender to institute foreclosure proceedings on the Texas properties securing the loan should Developers default. *Cf. Bryant*, 153 S.W.3d at 631 (possibility that nonresident defendant might in future find it necessary to take advantage of Texas foreclosure law to enforce property rights not evidence of purposeful availment for general jurisdiction). PCG's promise was to aid Lender in taking possession of the Texas properties; PCG did not stand to receive any interest in the properties by instituting foreclosure proceedings. *See Turman v. POS Partners, LLC*, 541 S.W.3d 895, 901 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[A] single act or occasional acts may be insufficient to establish jurisdiction if the act's nature, quality, and surrounding circumstances create only an attenuated connection with the state, diminishing the reasonable foreseeability of litigation there."). Further, the possibility of foreclosure, which Schramm

22

described as "remote," is entirely unrelated to Developers' claims that PCG misrepresented Lender's fees and the loan pay-off amount. *See Moki Mac*, 221 S.W.3d at 585 (requiring "substantial connection" between contacts and operative facts of litigation); *see also Brenham Oil & Gas*, 472 S.W.3d at 765 ("The Texas-linked evidence relied upon by [plaintiff] pertains only to [defendant]'s nontortious conduct . . . . [t]hese forum contacts are not the operative facts of the litigation and therefore are not contacts that will support an exercise of specific jurisdiction.").

We hold that the cumulative force of PCG's Texas contacts cannot be characterized as extensive. Such narrowly-drawn, perfunctory acts as transmitting payments and other documents—even those alleged to contain misrepresentations—to Texas residents, and servicing a loan to which it was not even a party pursuant to an agreement with a nonresident lender, do not establish that PCG availed itself of the privilege of doing business in Texas. *See Searcy*, 496 S.W.3d at 65, 74–75 (location of executives in Texas and corresponding communications with nonresident entity were fortuitous). Nothing in PCG's fulfillment of its obligations to Lender indicates that PCG chose to enter the state of Texas and conduct business here—at most, PCG's contacts are with Texas residents as opposed to purposeful availment of the forum itself. Accordingly, the trial court properly concluded that it could not exercise specific jurisdiction over PCG. *Kelly*, 301 S.W.3d at 659 (defendant can negate jurisdiction on legal basis

by showing that even if plaintiff's alleged facts are true, defendant's contacts with Texas do not amount to purposeful availment).

We overrule Developers' first and third issues.

## C. Affidavit Testimony

In their second issue, Developers argue that the trial court erred in relying on Schramm's "legally insufficient" affidavit in impliedly finding that PCG negated their jurisdictional allegations. They assert that Schramm's affidavit testimony that PCG lacked Texas connections did not constitute "competent evidence" because his subsequent deposition testimony demonstrated that he lacked personal knowledge.

With regard to general jurisdiction, Developers argue that Schramm, PCG's vice president, demonstrated a lack of knowledge regarding PCG's Texas contacts generally. For example, when asked about advertising efforts in Texas, he stated that he knew "a little bit" about PCG's advertising but that they "don't really do much." And he stated that someone would have to sort through the loans to determine whether PCG had "borrowers or lenders on loans" located in Texas. But he also testified that, in its ten-year history, PCG has serviced only four loans secured by Texas property and foreclosed on only one. Schramm's lack of familiarity with PCG's few Texas contacts does nothing to undermine—and indeed

is consistent with—his affidavit testimony that PCG does not engage in continuing relationships and obligations with Texas.

With regard to specific jurisdiction, Developers challenge Schramm's testimony that all of PCG's actions leading up to the loan occurred in Utah. We decline to address this argument because its resolution would not change the outcome of this appeal. *See* TEX. R. APP. P. 47.1 (opinion must address every issue raised and necessary to final disposition of appeal); *see also Tex. Tech Univ. Health Scis. Ctr. v. Villagran*, 369 S.W.3d 523, 528 (Tex. App.—Amarillo 2012, pet. denied) (appellate court would not address additional arguments where it had addressed "every contention raised and necessary to a final disposition" of appeal). Regardless of whether Schramm had personal knowledge of PCG's pre-closing actions, because PCG did not dispute Developers' jurisdictional facts, but instead negated specific jurisdiction on a legal basis, the affidavit testimony Developers complain about is not implicated in our analysis. *See Dukatt v. Dukatt*, 355 S.W.3d 231, 240 (Tex. App.—Dallas 2011, pet. denied) (because defendant did not dispute plaintiff's jurisdictional allegations but instead negated jurisdiction on legal basis, admissibility of complained-of exhibits were "not germane to our analysis of whether [defendant] met his burden to negate general and specific jurisdiction").

25

We overrule Developers' second issue, and we conclude that PCG has negated all bases for the assertion of personal jurisdiction over it.[9]

**Conclusion**

We affirm the trial court's dismissal order.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

---

[9] Because we have held that Developers failed to establish that PCG had minimum contacts with Texas, we need not address Developers' fourth issue, in which they argue that the exercise of personal jurisdiction would not offend the traditional notions of fair play and substantial justice. *See Miles v. Barton*, No. 01-16-00288-CV, 2017 WL 711745, at *10 n.9 (Tex. App.—Houston [1st Dist.] Feb. 23, 2017, no pet.) (mem. op.).