

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00449-CV

Donald **MCLEAN**, DM Innovations LLC, TWWM LLC d/b/a TP Imports, and
Thunder Pumpkin Imports LLC,
Appellants

v.

**PARADIGM SRP LLC** d/b/a Drivetanks.com,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2020-02-33168-CV
Honorable Camile Glasscock Dubose, Judge Presiding

Opinion by:　　Liza A. Rodriguez, Justice

Sitting:　　　Irene Rios, Justice
　　　　　　　Liza A. Rodriguez, Justice
　　　　　　　Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed:　October 31, 2023

REVERSED AND RENDERED

　　　Appellants Donald McLean, DM Innovations LLC, TWWM LLC d/b/a/ TP Imports, and

Thunder Pumpkin Imports LLC ("the defendants") challenge the trial court's order overruling

their special appearance in a breach of contract suit. We reverse the trial court's order and render

judgment dismissing the breach of contract claim against the defendants.

---

[1]Sitting by assignment pursuant to section 74.003(b) of the Texas Government Code

BACKGROUND

The defendants, a Pennsylvania resident and three Pennsylvania corporations, were sued by appellee, Paradigm SRP LLC d/b/a Drivetanks.com ("Paradigm"), a Texas corporation. Paradigm's petition alleged that it reached an agreement with the defendants to purchase a military tank, which was located in Europe. The petition further alleged that the defendants breached the parties' agreement by failing to deliver the tank to Texas. As to personal jurisdiction, Paradigm alleged that its breach of contract claim "ar[ose] out of Defendants' purposefully directed marketing, advertising, sales, as well as communications with citizens of Uvalde County, State of Texas."

The defendants filed a special appearance, asserting the trial court lacked personal jurisdiction over them. Among other things, the defendants asserted they lacked sufficient minimum contacts with Texas to satisfy due process. According to the defendants, any contacts they had with Texas were fortuitous rather than purposefully directed, and there was no nexus between these contacts and Paradigm's claim. The defendants submitted evidence—an affidavit from McLean—in support of their special appearance.

In his affidavit, McLean testified that in August 2016, he forwarded a photograph of the tank to a third party, who posted it on his website. At the time, McLean was located in Poland. After the tank was posted on the third-party's website, McLean had a phone conversation with Paradigm's chief executive officer, Todd DiGidio, about Paradigm's interest in buying the tank. Thereafter, a series of emails were exchanged between McLean, DiGidio, and John Lindsey, who was Pardigm's vice-president of operations. When these initial emails were exchanged, McLean was still located in Poland. During subsequent communications, McLean was located in Pennsylvania. McLean testified that he did not own or possess the tank, and that Paradigm's representatives knew that his only role in the transaction was to identify the tank and set up

payment with the tank's owner. McLean also testified that Paradigm was "always solely responsible for the import or shipping of the tank into the United States." According to McLean, the defendants had no ties or contacts with Texas and did not "regularly conduct or solicit business in Texas." He further testified the defendants did not develop a marketing strategy for any business activity in Texas, did not regularly enter into contracts or advertise products or services in Texas, and did not place "any unsolicited promotional telemarketing calls" to Paradigm.

Paradigm filed a response to the special appearance, arguing that the defendants' minimum contacts with Texas were sufficient to support the exercise of specific jurisdiction over the defendants.[2] Paradigm alleged the defendants established minimum contacts by engaging in the following activities:

> Defendants successfully advertised their services to [Paradigm]—a Texas resident located on the Ox Hunting Ranch in Uvalde County.
>
> ....
>
> [F]ollowing the success of Defendants' successful and purposeful advertising effort in Texas, Defendants engaged in negotiations with [Paradigm] via telephone calls, text messages, and email regarding the sale of a Leopard IA5 tank to [Paradigm] in Texas.
>
> [] Defendants entered into a contract with [Paradigm] under the terms of which Defendants were to deliver the subject Leopard IA5 tank to [Paradigm] in Texas . . . it is immaterial that the contract was made by remote means.
>
> Having obtained a Texas contract from a Texas resident, Defendants then maintained ongoing contact and discussions with [Paradigm] in Texas and delivered invoices for payment to [Paradigm] in Texas.

Notably, Paradigm did not present any evidence to support its jurisdictional allegations.

The defendants filed a reply to Paradigm's response, in which they specifically challenged Paradigm's allegation that the defendants agreed to deliver the tank to Texas. The

---

[2]Paradigm's response explained that it was not alleging that the defendants were subject to general jurisdiction.

defendants attached additional evidence—two emails—in further support of their special appearance.

The trial court held a hearing, at which no additional evidence was presented. After considering the pleadings, the evidence on file, and the arguments of counsel, the trial court signed an order overruling the defendants' special appearance. The defendants appealed.

## STANDARD OF REVIEW

Whether a trial court may exercise personal jurisdiction over a nonresident defendant presents a question of law, which we review de novo. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). When, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). However, when the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

## SPECIAL APPEARANCE PROCEDURES

Special appearances are governed by Rule 120(a) of the Texas Rules of Civil Procedure, which provides in pertinent part: "The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of the discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). A ruling on a special appearance does not decide the merits of the case. TEX. R. CIV. P. 120a(2) ("No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof.").

"In the context of a special appearance, the parties bear shifting [] burdens." *Jay Zabel & Assocs., Ltd. v. Compass Bank*, 527 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2017, no

pet.). The plaintiff bears the initial burden to plead allegations sufficient to confer personal jurisdiction over the nonresident defendant. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff meets this burden, the defendant assumes the burden of negating all potential bases for jurisdiction alleged by the plaintiff. *Id*. "The plaintiff defines the scope and nature of the lawsuit" and "the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id*.

A defendant may negate jurisdiction on either a factual or legal basis. *Id*. at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. "If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show that the court has personal jurisdiction over the nonresident defendant." *Compass Bank*, 527 S.W.3d at 552-53. At this point, the plaintiff "risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Kelly*, 301 S.W.3d at 659.

"Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*. "A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis." *Compass Bank*, 527 S.W.3d at 553.

### PERSONAL JURISDICTION

Texas courts may exercise personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of jurisdiction, and the exercise of jurisdiction is consistent with due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.

2007). Texas's long arm statute provides, in relevant part, that "a nonresident does business in this state if the nonresident contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(1). "Texas's long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (internal quotation marks omitted).

"The Due Process Clause of the U.S. Constitution imposes no obstacle to a Texas court's exercise of personal jurisdiction over a nonresident defendant if that defendant has minimum contacts with the State and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 678 (Tex. 2022). "A nonresident defendant's contacts may give rise to either general or specific jurisdiction." *Id*. General jurisdiction exists when the defendant's contacts with the state are so continuous and systematic that the defendant is essentially at home in Texas. *Id*. at 679. Specific jurisdiction exists when (1) the defendant has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities in Texas, and (2) the defendant's potential liability arose from or is related to those contacts. *Id*.

"The minimum-contacts analysis requires that a defendant 'purposefully avail' itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id*. "A defendant is not subject to jurisdiction here if [his] Texas contacts are random, fortuitous, or attenuated." *Id*. "Nor can a defendant be haled into a Texas court for the unilateral

acts of a third party." *Id*. "It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis." *Id*.

"When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). "[T]he contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others." *Id*. at 228. "When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation." *Id*. A specific jurisdiction analysis focuses on the defendant's "actions and choices to enter the state of Texas and conduct business, as opposed to its contacts with Texas residents." *11500 Space Center, L.L.C. v. Private Capital Group, Inc.*, 577 S.W.3d 322, 331 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "[A] proper minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Old Republic Title Ins. Co. v. Bell*, 549 S.W.3d 550, 561 (Tex. 2018).

## ANALYSIS

On appeal, the defendants argue there is no basis in law or fact for the trial court to exercise personal jurisdiction over them. More specifically, the defendants argue the trial court erred in denying their special appearance because: (1) they did not have sufficient minimum contacts with Texas, that is, they did not purposefully direct their activities at Texas; (2) Paradigm's claim did not arise out of or relate to the defendants' purported contacts with Texas; and (3) the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice.

*Texas Long-Arm Statute*

As a preliminary matter, we must determine if Paradigm alleged sufficient facts to bring the defendants within the reach of the Texas long-arm statute. Both Paradigm's petition and its response to the special appearance guide our determination. *See Cirrus Design Corp. v. Berra*, 633 S.W.3d 640, 647 (Tex. App.—San Antonio 2021, no pet.). Paradigm's petition alleged that its breach of contract claim arose out of the defendants' purposefully directed marketing, advertising, and sales, and communications with citizens of Uvalde, Texas. Paradigm's response to the special appearance alleged that the defendants purposefully established minimum contacts with Texas by engaging in contract negotiations with Paradigm and by agreeing to deliver the tank to Texas. We conclude that the allegations in Paradigm's petition and response allege that the defendants did business in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(1) ("a nonresident does business in this state if the nonresident contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state."). Thus, to succeed on their special appearance, the defendants were required to negate all jurisdictional bases alleged in Paradigm's pleadings. *See Kelly*, 301 S.W.3d at 658-59 (recognizing that if the plaintiff fails to plead facts bringing the defendant within the reach of the long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction).

*Specific Jurisdiction*

In this case, the sole basis for exercising personal jurisdictional over the defendants is specific jurisdiction.[3] Paradigm contends that the defendants' "briefing does not directly or clearly" challenge the first component of the specific jurisdiction analysis, that is, whether the defendants established minimum contacts with Texas by purposefully availing themselves of conducting activities in Texas. We disagree. The defendants' brief repeatedly complains about

---

[3]Paradigm acknowledges on appeal that this case involves specific jurisdiction only.

the lack of evidence showing that they engaged in activities purposefully directed at Texas. "An appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points." *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995); *see St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020) (recognizing that a party sufficiently preserves an issue for review by arguing its substance, even if it does not call the issue by name); TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). Having concluded the defendants' brief challenges the first component of the specific jurisdiction analysis, we address this complaint.

### *Minimum Contacts and Contract Claims*

It is well-settled that the existence of a contract between a Texas resident and a nonresident does not "automatically establish sufficient minimum contacts" with Texas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 472, 478 (1985) (deciding whether and to what extent a contract can constitute a contact for purposes of minimum contacts due process analysis); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 786 (Tex. 2005) (acknowledging that "a single contract with a Texas resident" cannot "automatically establish jurisdiction"). In *Burger King*, the United States Supreme Court explained that, when determining if a defendant has purposefully established minimum contacts in a contract situation, courts should consider: (1) the parties' prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. 471 U.S. at 479.

"Merely contracting with a resident of the forum state or engaging in communications during performance of the contract generally is insufficient to subject a nonresident to the forum's jurisdiction." *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886 (Tex. App.–Houston [14th Dist.] 2011, no pet.). "A nonresident's action in initiating phone calls from the

nonresident's state directed to Texas is not enough to satisfy the minimum contacts requirements." *Evergreen Media Holdings, LLC v. FilmEngine*, No. 09-14-00364-CV, 2016 WL 5399760, at *5 (Tex. App.—Beaumont Sept. 22, 2016, no pet.); *see Old Republic Title*, 549 S.W.3d at 560 ("On their own, numerous telephone communications with people in Texas do not establish minimum contacts…."). However, actions that relate to the formation of the contract and the subsequent breach are relevant to a specific jurisdiction analysis. *Evergreen Media Holdings,* 2016 WL 5399760, at *5. Another important consideration is the contract's place of performance. *Id*.

On appeal, the defendants argue they negated all jurisdictional bases alleged by Paradigm citing to their jurisdictional evidence. Paradigm counters that the defendants did not negate all jurisdictional bases, relying exclusively on its verified pleadings. However, Paradigm's reliance on its verified pleadings is misplaced. "Generally, pleadings are not competent evidence, even if sworn or verified." *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *OZO Capital, Inc. v. Syphers*, No. 02-17-00131-CV, 2018 WL 1531444, at *8 (Tex. App.—Fort Worth Mar. 29, 2018, no pet.) (noting that pleadings were not evidence in a special appearance case); *Atom Nanoelectronics, Inc. v. Applied NanoFluorescence, LLC*, No. 01-15-00952-CV, 2016 WL 3223670, at *5 (Tex. App.—Houston [1st Dist.] June 9, 2016, no pet.) ("[S]worn pleadings do not count as evidence" in a special appearance case). Thus, Paradigm's petition and response were not evidence, and they did not satisfy its evidentiary burden to prove that the trial court had personal jurisdiction over the defendants. *See Kelly*, 301 S.W.3d at 659; *Compass Bank*, 527 S.W.3d at 552-53.

### *Marketing, Advertising, and Solicitation*

Paradigm argues the defendants had minimum contacts with Texas because they marketed and advertised to Texas residents and "specifically solicited" the sale of the tank to

Paradigm. But the only evidence presented shows that the defendants did not engage in any marketing, advertising, and solicitation directed at Texas. In his affidavit, McLean testified that he never "individually or as a principal or member of the named defendant entities in this case" "develop[ed] a marketing strategy for any business activity within the State of Texas" or "advertised products or services in Texas." McLean further testified that he "and the other named entities [] do not regularly conduct or solicit business in the State of Texas." Thus, the record does not support an implied finding that the defendants directed marketing and advertising at Texas, or that the defendants solicited business in Texas.

As to Paradigm's assertion that the defendants "specifically solicited" Paradigm to buy the tank, there is no evidence to support it. *See Silbaugh v. Ramirez*, 126 S.W.3d 88, 95-96 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting that the plaintiff's affidavit and trial testimony proved that the nonresident defendant had solicited business from the plaintiff during two conference calls); *Rynone Mfg. Corp. v. Republic Indus., Inc.*, 96 S.W.3d 636, 639-40 (Tex. App.—Texarkana 2022, no pet.) (stating that the record contained "testimony that Rynone purposely called Republic, a Texas company, to solicit its business.").

Here, the defendants presented the only evidence on this topic. In his affidavit, McLean testified that "[a]t the end of August 2016," he "forwarded a photograph of the military tank to an associate who maintains a website" and the associate "posted a photo of the tank on the site." McLean also testified that, after the photograph appeared on the website, he and Paradigm's chief executive officer, Todd Digidio, spoke on the telephone about "Paradigm's interest in purchasing the tank." McLean further testified that none of the defendants placed "any unsolicited promotional telemarketing phone calls to" Paradigm. We conclude that this testimony refutes Paradigm's assertion that the defendants specifically solicited Paradigm. Thus, the record

does not support an implied finding that the defendants established minimum contacts by specifically soliciting business from Paradigm.[4]

### *Terms of the Contract—Delivery to Texas*

Paradigm next argues the defendants had minimum contacts with Texas because the terms of the parties' contract required the defendants to deliver the tank to Texas.[5] According to Paradigm, the defendants had minimum contacts with Texas because they agreed to partially perform the contract in Texas. The only evidence presented showed that the terms of the contract did not require the defendants to deliver the tank to Texas. In his affidavit, McLean testified that "Paradigm was always solely responsible for the import or shipping of the tank into the United States."[6] Paradigm did not present any evidence disproving McLean's testimony. Thus, there is no evidence that the defendants agreed to deliver the tank to Texas. The record does not support an implied finding that the defendants established minimum contacts with Texas by agreeing to deliver the tank to Texas.

By presenting uncontroverted evidence that they did not direct marketing or advertising to Texas, did not generally solicit business in Texas, did not specifically solicit business from Paradigm, and did not agree to perform the contract in Texas by delivering the tank to Paradigm, the defendants negated each of these bases for exercising specific personal jurisdiction over the defendants.

---

[4]Paradigm also argues on appeal that the defendants established minimum contacts with Texas by "reaching out to a Texas company" and "inducing" it to buy the tank. Nevertheless, Paradigm did not identify these activities as grounds for specific jurisdiction in its pleadings.

[5]A written contract does not appear in the record.

[6]The defendants argue that the emails attached to its reply prove that the defendants were not responsible for shipping the tank the United States; however, we need not consider the emails because McLean's testimony is clear and direct.

Finally, on appeal Paradigm argues that the defendants established minimum contacts with Texas by engaging in various activities after the parties contracted, such as sending invoices to Paradigm, communicating with Paradigm about the tank's mechanical condition and transport, and receiving payments from Paradigm. However, to the extent the cited activities relate to communications concerning the execution and performance of the contract itself, they "are insufficient to establish the minimum contacts necessary to support the exercise of specific jurisdiction over [a] nonresident defendant." *See Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 418 (Tex. App.—Dallas 2008, no pet.) (recognizing that the existence of a contract between a nonresident defendant and a resident of the forum and engaging in communications for the purpose of executing and performing the contract are not activities that support the exercise of specific personal jurisdiction over the nonresident defendant); *see also Max Protetch*, 340 S.W.3d at 886 (recognizing that merely engaging in communications during the performance of a contract is generally insufficient to subject a nonresident to the forum's jurisdiction). And, to the extent the cited activities relate to the acceptance of payments under the contract, they are insufficient to support specific jurisdiction. *See Weldon-Francke v. Fisher*, 237 S.W.3d. 789, 796 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[C]ontracting with and accepting payment from Texas residents for services performed [in another state] is insufficient to support specific jurisdiction.") (citing *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597-98 (Tex. 2007)). Even if true, Paradigm's allegations about the defendants' post-contract activities are not the type of activities courts consider in determining minimum contacts in a contract case. As a matter of law, the defendants did not establish minimum contacts by engaging in communications related to the performance and execution of the contract and by receiving payments that Paradigm mailed from Texas.

"Ultimately the goal of our analysis is to determine whether [the defendants'] conduct and connection to [Texas] are such that [they] should reasonably anticipate being haled into court [in Texas]." *Evergreen Media Holdings*, 2016 WL 5399760, at *5. In the present case, the defendants contracted with a Texas business, but they did not engage in any Texas-directed activities from which they could have anticipated being called into a Texas court. Based on this record, we conclude that the defendants did not purposefully avail themselves of the privilege of conducting activities in Texas and, therefore, they have insufficient minimum contacts with Texas for the trial court to exercise personal jurisdiction over them.

Having concluded that the defendants lack the minimum contacts necessary to support the exercise of personal jurisdiction, we need not address the defendants' remaining arguments. *See* TEX. R. APP. P. 47.1 (requiring a court of appeals to hand down an opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal).

## CONCLUSION

We reverse the trial court's order overruling the defendants' special appearance and render judgment dismissing Paradigm's breach of contract claim against the defendants.

Liza A. Rodriguez, Justice